11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Jimmie R.
McMillan; Bruce W. McClymond; 

FOAG, Inc.; First
National Bank Albany/

Breckenridge; Orison F. AMack@
McDonald, II; 

McDonald Investments,
Inc.; and Ole Chaparral

on Possum Kingdom

 

Appellants

Vs.                   No.  11-02-00192-CV -- Appeal from Stephens County

Sammy J. Dooley; Myron
R. Johnson, Jr.; and

W. Don Smith

 

Appellees

 

This appeal involves the enforcement of preferential
purchase rights in a package conveyance of oil and gas leases.  Three of the leases conveyed in the package
were subject to rights of first refusal in favor of the original lessees of the
leases.  The owner of the leases failed
to comply with the notice requirements of the preferential purchase provisions
prior to conveying the leases.  The trial
court awarded a recovery in favor of the preferential rightholders
as a result of the breach.  We affirm in
part, reverse and render in part, and reverse and remand in part.

                                                                 The
Three Leases








The parties refer to the three leases which are
the subject of this appeal as the ADooley
Lease,@ the AHill Lease,@
and the AJohnson
Lease.@  Sammy J. Dooley is the claimant with respect
to the Dooley Lease.  Dooley acquired the
Dooley Lease in May 1976 by leasing his family=s
ranch from his mother.[1]
He subsequently executed a farmout agreement in
August 1976 with AOle
Chaparral on Possum Kingdom@
whereby Ole Chaparral on Possum Kingdom agreed to drill on the Dooley Lease in
exchange for the right to obtain an assignment of Dooley=s
interests in the Dooley Lease if successful drilling operations occurred.[2]  The farmout
agreement contained the following provision which is at issue in this appeal:

It is further understood and agreed that we, for
ourselves, our successors and assigns, reserve a preferential right to purchase
the lease to be assigned herein, including any personal property which may be
situated thereon.  Before you, or your
heirs, successors or assigns, shall (1) sell all or any portion of the lease to
be assigned herein, (2) plug and abandon any wells on said lease, or (3)
finally plug and abandon said lease, you shall first notify us, or our
successors or assigns, in writing by reg-istered
mail.   Such notification shall include
the highest bona fide price offered, and we, or our successors or assigns,
shall have ten (10) days after receipt of such written notification to purchase
for the price offered and receive an assignment, or to reject such offer and allow
same to be sold and/or abandoned.  If we,
or our successors or assigns, fail to act within ten (10) days after receipt of
such written notice, then you, your heirs, successors or assigns, shall be free
to sell and/or abandon.  The above and
foregoing preferential option to purchase shall not apply to hypothecation or
mortgage of your assets.

 

As a result of successful drilling operations, Dooley
subsequently assigned the Dooley Lease to AMack
McDonald d/b/a McDonald Investments@
in August 1978.  The assignment expressly
provided that it was subject to the terms and conditions of the August 1976 farmout agreement.  








W. Don Smith 
is the claimant with respect to the Hill Lease.  Smith acquired the Hill Lease in October
1975.[3]  He subsequently executed a farmout agreement in May 1976 with AOle
Chaparral Oil and Gas@
whereby Ole Chaparral Oil and Gas agreed to drill a well on the Hill Lease in
exchange for the right to obtain an assignment of Smith=s
interests in the Hill Lease if successful drilling operations occurred.[4]  The farmout
agreement for the Hill Lease contained an identical preferential  purchase provision as contained in the Dooley
Lease farmout agreement.  As a result of Ole Chaparral Oil and Gas=s successful drilling operations on the
Hill Lease, Smith assigned the Hill Lease to Ole Chaparral Oil and Gas in July
1976.  This assignment  expressly provided that it was subject to the
terms and conditions of the May 1976 farmout agreement.


Myron R. Johnson, Jr. is the claimant with respect
to the Johnson Lease.  Johnson  acquired the Johnson Lease in August
1978.  He subsequently executed a farmout agreement in August 1978 with AMack McDonald, d/b/a McDonald
Investments@ whereby
McDonald agreed to drill a well on the Johnson Lease in exchange for the right
to obtain an assignment of Johnson=s
interests in the Johnson Lease if successful drilling operations occurred.  The farmout
agreement for the Johnson Lease contained an identical preferential purchase
provision as contained in the Dooley Lease farmout
agreement.  As a result of successful
drilling operations, Johnson subsequently assigned the Johnson Lease to
McDonald.

Either McDonald or an entity under his control
continuously owned and operated the three leases from the mid-1970s until
January 1998.  McDonald assigned the
three leases in January 1998 to Jimmie R. McMillan and Bruce W. McClymond in a package conveyance of multiple leases.[5]  This conveyance of the leases to McMillan and
McClymond is the event which precipitated the
underlying lawsuit.  

                                                          The
Package Conveyance

McMillan contacted McDonald in the latter part of
1997 expressing his and McClymond=s 
interest in purchasing  the Dooley
Lease.  McDonald advised McMillan that he
was only interested in selling all of his leases as a package rather than just
selling the Dooley Lease by itself.  The
parties to the conveyance believed that the Dooley Lease was the only lease
that had a positive value.  McDonald
insisted on the inclusion of the other leases in the conveyance, however, in
order to reduce his financial liabilities for these leases.  McDonald cited his recent health problems as
another reason why he wanted to convey all of his leases so that he could
essentially retire from the oil and gas business.








McClymond submitted a
written offer to McDonald on December 17, 1997, to purchase the  leases for $292,000.00.  McDonald rejected McClymond=s offer of $292,000.00 for the leases
and made a counter-demand in the amount $306,543.00 in a letter dated December
23, 1997.  McMillan and McClymond subsequently accepted McDonald=s counter-demand of $306,543.00.  McDonald conveyed the leases to McMillan and McClymond in a series of written assignments with an
effective date of January 1, 1998.

Despite the preferential purchase rights
applicable to the Dooley, Hill, and Johnson Leases, Dooley, Smith, and Johnson
were not advised of the negotiations between McDonald, McMillan, and McClymond prior to closing.[6]  McDonald testified that he did not remember
that the three leases were subject to preferential purchase rights.  McMillan and McClymond
did not retain an attorney to conduct a title examination prior to
closing.  Instead, McClymond
conducted his own title examination.  He
did not discover the existence of the preferential right of purchase provisions
during his research.

Dooley learned of the conveyance within a short
period of time after it occurred.  As set
forth in detail below, a great deal of communication occurred between Dooley
and the parties to the conveyance concerning the Dooley Lease after the
conveyance.   Smith testified that,
although he was aware of the conveyance at or near the time of its occurrence,
he did not have any communications with the parties to the conveyance prior to
filing suit.  Johnson alleged that he did
not learn of the conveyance until several months afterward.

                            Communications
Pertaining to Dooley=s
Preferential Purchase Right

Upon learning of the conveyance in February 1998,
Dooley contacted McMillan by telephone to advise him of the preferential
purchase right which Dooley possessed with respect to the Dooley Lease.  McMillan made an oral offer to Dooley during
this conversation for Dooley to purchase the package of leases from McMillan
and McClymond for the same price which they had paid
to McDonald for the leases.  Dooley
declined McMillan=s offer
to purchase all of the leases because Dooley was only interested in the Dooley
Lease.  Dooley=s
attorney subsequently wrote a letter to McMillan and McDonald dated February
19, 1998, which formally informed them of Dooley=s
preferential purchase right.  The letter
demanded that McMillan and McDonald provide Dooley with information pertaining
to the terms of the conveyance.








McMillan formally responded to Dooley=s request for information in a letter
dated March 9, 1998.  McMillan stated in
the letter that he and McClymond purchased the
Dooley, Hill, Johnson, and Barnett-Davidson Leases from McDonald for a
consideration of $306,543.00.  McMillan
included a copy of McDonald=s
written counter-demand dated December 23, 1997, and an acceptance letter dated
January 15, 1998, from McMillan and McClymond.  McMillan concluded the March 9, 1998, letter
with the following statement: 

This
group of properties was offered to me as a package and included the plugging
obligation for the eight non-commercial and marginal wells on the other
properties.  Since there is no way to
split out the properties and associated obligations, the purchase is being
offered to you on the identical terms.  

 

If
you wish to exercise your option, please tender the purchase price set out
above to the First National Bank of Breckenridge, Texas within ten (10) days.

 

Dooley=s
attorney responded to McMillan=s
letter of March 9, 1998, in a letter dated March 18, 1998.  The attorney=s
letter stated in relevant part as follows:

[Dooley] and I can appreciate the predicament that
exists for you as a purchaser in connection with this transaction.  You have paid $306,543.00 for a group of oil
and gas properties and only one of those properties is subject to the
preferential option.[[7]]    [Dooley] has absolutely no interest
whatsoever in any of these other properties. 
His interest is solely in connection with the [Dooley Lease].  As you are probably aware, this is an oil and
gas lease which is situated on property which has been in Mr. Dooley=s family for a number of years.  The other problem we have with this is the
obligation to provide notice was probably that of Mr. McDonald in connection
with this matter.  Mr. McDonald had
control of how the offer to purchase the properties was to be made and
apparently dictated how the transaction was structured.  Because of this, it is impossible for us to
determine how much of the purchase price is applicable to the Dooley Lease and
how much would be applicable to the other properties.  You=ve indicated there was a plugging obligation for eight
non-commercial and marginal wells on the other properties.  We have no other information concerning these
properties and do not know what their protective (sic) capacities would be and
whether the salvage from those properties would yield a net return after the
plugging.  We also have no way of knowing
whether the title as to those properties is satisfactory or whether there is
any cloud on any of the properties as to their title.

 








Accordingly, your offer to give Mr. Dooley the
option to buy our lease and all of the other properties that were a part of the
package with Mr. McDonald is hereby declined. 
We sincerely appreciate your efforts to try and comply with this
agreement, but under the circumstances, this may be impossible to do so since
the transaction is already closed without any notice to Mr. Dooley....

 

[Dooley] might be interested in visiting with you
concerning the lease and learning a little bit more about your intentions and
perhaps working out some sort of an agreement or understanding whereby the
preferential right to purchase could be waived in this instance.  If you would like to discuss this matter
further, we would be happy to do so.

 

McMillan and McClymond had not taken
any actions to improve production on the Dooley Lease prior to receiving the
March 18, 1998, letter from Dooley=s
attorney.  McMillan and McClymond dispatched a workover
rig to the Dooley Lease on the day after they received this letter.

The next discussion between Dooley and McMillan
and McClymond occurred in April 1998 when  Dooley=s
attorney contacted McClymond by telephone.  Dooley=s
attorney asked McClymond to provide him with the
amount of money which McMillan and McClymond actually
paid for the Dooley Lease by itself.  McClymond did not respond with a total dollar amount.  Instead, McClymond
advised Dooley=s
attorney that the consideration paid for the Dooley Lease consisted of the
payment of $306,543.00 plus the assumption of the unliquidated
liabilities attributable to the other three leases.  Dooley=s
attorney sent a follow-up letter to McMillan and McClymond
dated June 5, 1998, wherein he complained that McMillan and McClymond
had failed to provide Dooley with the total dollar amount paid for the Dooley
Lease.  Dooley=s
attorney warned McMillan and McClymond that Dooley
would file suit to seek a judicial determination of the amount which they had
actually paid for the Dooley Lease if they did not provide this information in
response to his demand.








Dooley did not make any subsequent demands with
respect to the Dooley Lease for approximately two years.  During this two-year period, the price of
natural gas increased significantly.[8]  Dooley=s
next demand occurred when his attorney wrote another letter to McDonald,
McMillan, and McClymond on August 4, 2000.  This letter contained the following demand: 

Demand is again made for you to furnish to Mr.
Dooley the actual consideration paid for the Dooley Lease without including
other leases.  Once received, Mr. Dooley
will advise of his decision within the ten (10) days allowed as to his
preferential right.  Be advised any
response by Mr. Dooley will require all revenue received by you from the lease
to be deducted from the purchase price after allowance for operating
expenses.  Demand is also hereby made for
this information.  Your failure to comply
with this demand upon our part will leave us no other option but to proceed
with litigation and have a court set the price and damages for breach of the
contract with Mr. Dooley.

 

                                                            The
Underlying Lawsuit

Dooley filed the underlying action on August 31,
2000, against McMillan, McClymond, McDonald, McDonald
Investments, Inc., Ole Chaparral on Possum Kingdom, FOAG, Inc., and First
National Bank Albany/Breckenridge.[9]  Dooley alleged that McDonald, McMillan, and McClymond breached the preferential purchase provision by
failing to offer Dooley the right to purchase only the Dooley Lease.  In an effort to enforce the preferential
purchase right, Dooley sought a determination from the trial court of Awhat a reasonable purchase price for
the [Dooley Lease] actually was or should be in connection with the
transaction.@  Dooley also asserted claims of tortious interference with a contract and fraud against
McDonald, McMillan, and McClymond.








Smith and Johnson joined as plaintiffs with Dooley
in an amended pleading filed on June 13, 2001. 
Smith and Johnson alleged that they had not been provided with notice of
the conveyance of the Hill and Johnson Leases as required by the respective
preferential purchase provisions.  Smith
and Johnson asserted claims seeking to enforce the preferential purchase rights
applicable to the Hill and Johnson Leases. 
Dooley, Smith, and Johnson also asserted a claim in their amended
pleading that McMillan, McClymond, and FOAG, Inc.
were bad faith trespassers upon the leases after the conveyance.

The defendants asserted numerous defenses to the
action, including limitations, waiver, estoppel, and laches.[10]  The defendants also asserted that Johnson
lacked standing to assert a claim with respect to the Johnson Lease.  McMillan, McClymond,
FOAG, Inc., and First National Bank Albany/Breckenridge asserted a counterclaim
seeking a recovery in quantum meruit against Dooley,
Smith, and Johnson for operations conducted on the leases after the conveyance.

Acting as the fact finder, the trial court made a
preliminary determination  that the
defendants breached the preferential purchase provisions which applied to the
Dooley, Hill, and Johnson Leases. With respect to the Dooley Lease, the trial
court determined that McMillan and McClymond paid Aconsideration in the value of $326,743@ for the Dooley Lease.  The trial court based this determination on
McMillan and McClymond=s
initial estimate that they would incur plugging costs of $20,000.00 on the
other leases in addition to the payment of $306,543.00 for the Dooley Lease.
Upon Dooley=s
election to purchase the Dooley Lease at the price determined by the trial
court, the trial court subsequently granted Dooley=s
request for specific performance by awarding title to the Dooley Lease to
Dooley.  The trial court also awarded attorney=s fees to Dooley.

The trial court determined that McMillan and McClymond intentionally terminated the Hill Lease by lack
of production after the conveyance.  The
trial court awarded a money judgment to Smith in the amount of $7,500.00 based
on one-half of the net fair market salvage value of the lease at the time that
it terminated.[11]  The trial court also awarded attorney=s fees to Smith.








With respect to the Johnson Lease, the trial court
determined its fair market value at the time of the conveyance to be zero.  The trial court awarded title to the Johnson
Lease to Johnson.  The trial court also
awarded Johnson a money judgment in the amount of $10,122.43 against the
defendants based on the trial court=s
determination of the net working interest revenue derived from the Johnson
Lease after the conveyance.  The trial
court also entered a money judgment against McMillan in the amount of $4,000.00
for a pump jack which McMillan sold from the Johnson Lease after the
conveyance.  The trial court also awarded
attorney=s fees to
Johnson.

The trial court denied the quantum meruit claim asserted by McMillan, McClymond,
FOAG, Inc., and First National Bank Albany/Breckenridge.  The trial court also denied Dooley, Smith,
and Johnson=s claims
for negligence, tortious interference with a contract,
fraudulent conspiracy, usury, and bad faith trespass.

                                                                 Issues
on Appeal

McMillan, McClymond,
FOAG, Inc., and First National Bank Albany/Breckenridge bring 39 points of
error attacking the trial court=s
judgment in favor of Dooley, Smith, and Johnson.  McDonald, McDonald Investments, Inc., and Ole
Chaparral on Possum Kingdom bring an additional 
six issues attacking the recoveries obtained by Dooley, Smith, and
Johnson.  Dooley and Johnson have
appealed the trial court=s
denial of their contention that McMillan, McClymond,
and FOAG, Inc. were bad faith trespassers in six appellate issues.

                                           Defenses
of Limitations, Laches, and Estoppel

Prior to considering the plaintiffs= claims individually, we address
contentions asserted by McDonald, McDonald Investments, Inc., and Ole Chaparral
on Possum Kingdom that are common  to the
claims of all three plaintiffs. 
McDonald, McDonald Investments, Inc., and Ole Chaparral on Possum
Kingdom assert in their fourth issue that the evidence offered at trial
conclusively established that plaintiffs=
claims are barred under the affirmative defenses of limitations, laches, and estoppel.   When a party attacks the legal sufficiency
of adverse findings on issues on which he or she has the burden of proof, he or
she must demonstrate on appeal that the evidence establishes, as a matter of
law, all vital facts in support of the issues. 
Dow Chemical Company v. Francis, 46 S.W.3d 237, 241 (Tex.2001).

We first note that McDonald, McDonald Investments,
Inc., and Ole Chaparral on Possum Kingdom did not plead laches
as an affirmative defense as required by TEX.R.CIV.P. 94.  Therefore, they have waived the defense of laches by failing to plead it in the trial court.  See McDaniel v. Tucker, 520 S.W.2d
543, 547 (Tex.Civ.App. - Corpus Christi 1975, no
writ).








By their express terms, the preferential purchase
provisions apply whenever the grantee of the farmout
agreement (1) sells all or any portion of the lease; (2) plugs and abandons any
well on the lease; or (3) finally plugs and abandons the lease.  There were many instances in McDonald=s course of operating the leases for
over 20 years where fractional interests in wells were conveyed  to investors and unproductive wells were
plugged.  McDonald never advised Dooley,
Smith, or Johnson of these actions even though he was technically required to
do so by the preferential purchase provisions. 
McDonald, McDonald Investments, Inc., and Ole Chaparral on Possum
Kingdom contend that plaintiffs=
claims are barred under the affirmative defenses of limitations and estoppel because of plaintiffs=
failure to file suit for the earlier breaches of the preferential purchase
provision.[12]


With respect to McDonald, McDonald Investments,
Inc., and Ole Chaparral on Possum Kingdom=s
limitations contention, they contend that plaintiffs=
causes of action for breach of the preferential purchase provision accrued when
the provisions were initially breached several years ago.  The event which precipitated this action was
McDonald=s
conveyance of the leases to McMillan and McClymond in
1998.  Plaintiffs=
suit is not barred by the applicable statute of limitations because they filed
suit within four years of this conveyance. 
See TEX. CIV. PRAC. & REM. CODE ANN. '
16.004 (Vernon 2002).  The earlier
breaches of the preferential purchase provisions do not affect the date of
accrual of the subsequent breaches which are the subject of this
proceeding.  See Pickett v. Keene,
47 S.W.3d 67, 76-77 (Tex.App. - Corpus Christi 2001,
pet=n dism=d); F.D. Stella Products Co. v.
Scott, 875 S.W.2d 462, 464-65 (Tex.App. - Austin
1994, no writ).

McDonald, McDonald Investments, Inc., and Ole
Chaparral on Possum Kingdom pleaded the defenses of estoppel
and waiver together in their trial pleadings. 
It appears that their estoppel contention on
appeal is based on the doctrine of waiver. 
They contend that plaintiffs waived subsequent compliance with the
preferential purchase provision by acquiescing in the earlier breaches.  As recently noted by the supreme court in Jernigan
v. Langley, 111 S.W.3d 153, 156-57 (Tex.2003):








Waiver is defined as Aan
intentional relinquishment of a known right or intentional conduct inconsistent
with claiming that right.@  Waiver is largely a matter of intent, and for
implied waiver to be found through a party=s
actions, intent must be clearly demonstrated by the surrounding facts and
circumstances.  There can be no waiver of
a right if the person sought to be charged with waiver says or does nothing
inconsistent with an intent to rely upon such right.  Waiver is ordinarily a question of fact, but
when the surrounding facts and circumstances are undisputed ...the question
becomes one of law.  (Citations omitted)

 

The previous breaches only concerned actions which conveyed or
abandoned fractional interests in the leases.  
The breach which is the subject of this action is much different than
the earlier breaches because it involves the complete divestiture of McDonald=s interests in the leases.  Given the lesser significance of the earlier
breaches which the plaintiffs excused, the evidence does not conclusively
establish that plaintiffs waived compliance with the preferential purchase
provision in the event McDonald conveyed all of his interests in the leases.
McDonald, McDonald Investments, Inc., and Ole Chaparral on Possum Kingdom=s fourth issue is overruled.  

                                           McDonald=s Individual Liability

McDonald, McDonald Investments, Inc., and Ole
Chaparral on Possum Kingdom assert in their sixth point of error that there is
legally insufficient evidence to support a recovery against McDonald in his
individual capacity in favor of any of the three plaintiffs.  The plaintiffs contend that McDonald has
waived any complaint regarding liability in his individual capacity because he
did not file a verified denial to the effect that he was not liable in the
capacity in which he was sued as required by TEX.R.CIV.P. 93(2).  We agree with the plaintiffs= contention that McDonald has waived
any complaint regarding his individual liability.  See Butler v. Joseph=s Wine Shop, Inc., 633 S.W.2d 926,
929-30 (Tex.App. - Houston [14th Dist.] 1982, writ
ref=d n.r.e.).  McDonald, McDonald Investments, Inc., and Ole
Chaparral on Possum Kingdom=s
sixth issue is overruled.

                                  The Nature
of Preferential Purchase Rights








A preferential right of purchase, also known as a
preemptive right or a right of first refusal, is a right granted to a party
giving him or her the first opportunity to purchase property if the owner
decides to sell it.  Abraham
Investment Company v. Payne Ranch, Inc., 968 S.W.2d 518, 524 (Tex. App. -
Amarillo 1998, pet=n den=d); Martin v. Lott, 482 S.W.2d
917, 920 (Tex.Civ.App. - Dallas 1972, no writ).  A preferential purchase right is essentially
a dormant option.  A.G.E., Inc. v.
Buford, 105 S.W.3d 667, 673 (Tex.App. - Austin
2003, pet=n den=d). 
It requires the property owner, before selling it to another, to offer
it to the rightholder on the terms and conditions
specified in the contract granting the right. 
A.G.E., Inc. v. Buford, supra at 673; see West Texas
Transmission, L.P. v. Enron Corporation, 907 F.2d 1554, 1561-62 (5th Cir.
1990).  When the property owner expresses
his or her intention to sell, the rightholder must
elect to either purchase the property or decline to purchase it and allow the
property owner to sell it to another.  A.G.E.,
Inc. v. Buford, supra at 673; Martin v. Lott, supra at 922.  The holder of such a right has no right to
compel a sale or to prevent a sale but only has the right to be offered the
property if and when the owner decides to sell. Abraham Investment Company
v. Payne Ranch, Inc., supra at 525; Martin v. Lott, supra at 922.

From a timing perspective, there is no dispute
that the preferential purchase provisions were initially breached because the
leases were conveyed without being offered to Dooley, Smith, and Johnson prior
to the conveyance.  The initial breach of
the preferential purchase provisions does not necessarily determine the outcome
of the parties=
dispute.  A purchaser of property subject
to a preferential purchase right takes the property subject to that right.  A.G.E., Inc. v. Buford, supra at
673.  When a sale is made in breach of
the preferential purchase right, the rightholder
obtains an enforceable option to acquire the property according to the terms of
the conveyance.  A.G.E., Inc. v.
Buford, supra at 673.  However, the
option is not perpetual, and the rightholder must
choose between exercising it or acquiescing in the transfer of the
property.  A.G.E., Inc. v. Buford,
supra at 673; Martin v. Lott, supra at 922.  When the rightholder
learns of a conveyance in violation of his or her right, he or she has the
opportunity to either accept or reject within the specified time frame, just as
if the offer to buy had been properly noticed. 
A.G.E., Inc. v. Buford, supra at 673; Martin v. Lott, supra
at 922.

                                                                   Dooley=s Claim

The trial court made the following findings of
fact and conclusions of law with respect to the liability aspects of Dooley=s claim:

                                                     Findings
of Fact

 

1.         Defendants
failed and refused to provide Dooley his preferential right to purchase the
Dooley Lease pursuant to the terms of and provisions of the preferential
purchase provision.

 

2.         Defendants
never orally presented to Dooley the opportunity to purchase only the Dooley
Lease.

 








            3.         Dooley never received written
presentment of any opportunity to purchase the Dooley Lease.

 

            4.         The only
offer extended by Defendants and received by Dooley to purchase the Dooley
Lease included as a package deal the purchase of the Johnson and Hill Leases.

 

            5.         The
Dooley, Johnson, and Hill Leases were each subject to preferential pur-chase rights held separately and in whole or in part by
third parties.

 

            6.         Defendants= offer to convey to Dooley the package
deal consisting of the Dooley, Johnson, and Hill Leases was not commercially
reasonable.

 

            7.         Defendants= offer to convey to Dooley the package
deal consisting of the Dooley, Johnson, and Hill Leases was not imposed in good
faith by Defendants.

 

            8.         Defendants= offer to convey to Dooley the package
deal consisting of the Dooley, Johnson, and Hill Leases was specifically
designed to defeat Dooley=s
preemptive rights.

 

                                                  Conclusions
of Law

 

            1.         The preferential purchase clause is a
binding price agreement and not a terms and conditions agreement.

 

            2.         Dooley is
entitled to exercise the preferential purchase clause contained in the farmout agreement applicable to the Dooley Lease.

 

            3.         Dooley,
having timely exercised his preferential right to purchase the Dooley Lease, is
entitled to recover title to and possession of the oil and gas lease which
comprises the Dooley Lease.

 

            4.         Defendants
did not have the legal right to include other leases with the Dooley Lease as
part of any preferential offer pursuant to the farmout
agreement applicable to the Dooley Lease.

 

            5.         Dooley was not legally obligated to
purchase the Defendants=
package deal offer which was not equitable.

 

            6.         The
package deal offered to Dooley by Defendants did not comply with the provisions
of the preferential purchase clause contained in the farmout
agreement applicable to the Dooley Lease.








 

Defendants bring numerous points of error
attacking these findings of fact and conclusions of law.  Findings of fact in a bench trial have the
same force and dignity as a jury verdict; an appellate court reviews sufficiency
challenges to findings of fact by the same standards we apply in reviewing a
jury=s
findings. Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex.1996).   Defendants attack the legal sufficiency of
the evidence supporting the liability findings of fact made by the trial
court.  When the party complaining of
legal sufficiency did not have the burden of proof at trial, we conduct our
review by considering only the evidence and inferences that support the finding
and disregard contrary evidence and inferences. Burroughs Wellcome Company v. Crye, 907
S.W.2d 497, 499 (Tex.1995).  An appellate
court will sustain a no-evidence point of error when (1) the record discloses a
complete absence of evidence of a vital fact; 
(2) the court is barred by rules of law or of evidence from giving
weight to the only evidence offered to prove a vital fact;  (3) the only evidence offered to prove a
vital fact is no more than a mere scintilla; or (4) the evidence establishes
conclusively the opposite of the vital fact. Uniroyal
Goodrich Tire Company v. Martinez, 977 S.W.2d 328, 334 (Tex.1998).

Appellate courts review a trial court=s conclusions of law de novo as legal
questions.  BMC Software Belgium, N.V.
v. Marchand, 83 S.W.3d 789, 794 (Tex.2002).  If the reviewing court determines that a
conclusion of law is erroneous but the trial court rendered the proper
judgment, the erroneous conclusion of law does not require reversal.  BMC Software Belgium, N.V. v. Marchand, supra at 794.

                                                        Dooley=s Liability Contentions

While the law concerning preferential purchase
rights appears to be settled, the application of these principles is difficult
in a situation involving a package conveyance of multiple properties.  The circumstances surrounding Dooley=s claim illustrate this difficulty.
Dooley=s
preferential pur-chase right only applied to the
Dooley Lease.  However, the conveyance
agreed to by defendants and presented to Dooley for consideration included
other leases in addition to the Dooley Lease. 
The conveyance was further complicated by the fact that the Hill and
Johnson leases were also subject to preferential purchase rights held by third
parties. 








Dooley premises his claim on the assertion that he
was not required to accept the other leases in order to exercise his
preferential purchase right.  Relying
upon this assertion, Dooley contends that the defendants did not present him with
a valid offer because of their inclusion of the other leases in the offer they
presented to him.  Dooley contends that
he was never required to undertake any actions prior to trial in order to
exercise his preferential purchase right because of the defendants= alleged defective  presentment. 
The thrust of Dooley=s
efforts at trial were directed at obtaining the trial court=s assistance in enforcing his
preferential purchase right.  Dooley
sought and obtained a determination from the trial court of the amount of
consideration which McMillan and McClymond paid for
only the Dooley Lease.  The trial court
awarded title to the Dooley Lease to Dooley based upon his subsequent tender of
this amount.

                   Did the Defendants Make a Sufficient
Presentment to Dooley?

The initial issue to determine  is whether the defendants sufficiently
presented Dooley with an opportunity to exercise his preferential purchase
right.  The trial court determined that
the defendants failed to provide Dooley with his preferential purchase right
pursuant to the terms and provisions of the preferential purchase provision.  McMillan, McClymond,
FOAG, Inc., and First National Bank Albany/Breckenridge attack this
determination in their first point of error. 
McDonald, McDonald Investments, Inc., and Ole Chaparral on Possum
Kingdom attack this determination in their second issue.

The U.S. Court of Appeals for the 5th Circuit
addressed the guidelines applicable to the presentment of an offer to the
holder of a preferential purchase right in Koch Industries, Inc. v. Sun
Company, Inc., 918 F.2d 1203, 1211-12 
(5th Cir. 1990).  In interpreting
Texas law on this subject, the court stated that the property owner has an
initial duty to make a reasonable disclosure of the offer=s terms.  Koch Industries, Inc. v. Sun Company,
Inc., supra at 1212.  The holder of
the preferential purchase right then has a subsequent duty to undertake a
reasonable  investigation of any terms
unclear to him.  Koch Industries, Inc.
v. Sun Company, Inc., supra at 1212. 
The rightholder does not have a duty to act in
order to exercise his preferential purchase right unless and until he receives
a reasonable disclosure of the terms of the contemplated conveyance.  Koch Industries, Inc. v. Sun Company,
Inc., supra at 1212.[13]








                                   The
Express Terms of the Preferential Purchase Provision 

Dooley asserts that the offer presented to him by
the defendants was invalid  because it
did not comply with the express terms of the preferential purchase
provision.  The trial court agreed with
Dooley=s
assertion by determining that the preferential purchase provision is a Abinding price@
agreement and not a Aterms
and conditions@ agreement.  McMillan, McClymond,
FOAG, Inc., and First National Bank Albany/Breckenridge attack the trial court=s construction of the preferential
purchase provision in their fourth point of error.  McDonald, McDonald Investments, Inc., and Ole
Chaparral on Possum Kingdom present a similar argument in their first issue.

In construing a written contract, the primary
concern of the court is to ascertain the true intentions of the parties as
expressed in the instrument. Coker v. Coker, 650 S.W.2d 391, 393
(Tex.1983).  If a written instrument is
so worded that it can be given a certain or definite legal meaning or
interpretation, then it is not ambiguous, and the court will construe the
contract as a matter of law. Century Bass Club v. Millender, 949 S.W.2d
841, 844 (Tex.App. - Waco 1997, writ den=d). To achieve this objective, we must
examine and consider the entire writing in an effort to harmonize and give
effect to all the provisions of the contract so that none will be rendered
meaningless.  Universal C. I. T.
Credit Corp. v. Daniel, 243 S.W.2d 154, 158 (Tex.1951). No single provision
taken alone will be given controlling effect; rather, all the provisions must
be considered with reference to the whole instrument. Myers v. Gulf Coast
Minerals Management Corporation, 361 S.W.2d 193, 196 (Tex.1962).  Language should be given its plain
grammatical meaning unless it definitely appears that the intention of the
parties would be thereby defeated. Century Bass Club v. Millender, supra
at 844-45.

The trial court entered several findings of fact
and conclusions of law  based upon the
court=s holding
in West Texas Transmission, L.P. v. Enron Corporation, supra.  The holder of a preferential purchase right
in West Texas Transmission asserted that the owner of the property
covered by the provision  impermissibly
added a condition to the terms of the contemplated conveyance which Aeffectively gutted@ the preferential purchase right.  West Texas Transmission, L.P. v. Enron
Corporation, supra at 1561.  In
analyzing the rightholder=s
argument, the court stated as follows:








The details of a particular [preferential
purchase] right depend upon the contract between the parties.  The terms of those contracts vary widely, and
courts must scrutinize the parties=
language to ascertain the scope of the [preferential purchase]  right. 
Although some contracts specify the price at which the owner must sell
the property, most contracts base the sale price and other terms of the rightholder=s
purchase contract on the bona fide offer made by a third party.  (Citation omitted)

 

West Texas Transmission, L.P. v. Enron
Corporation, supra at 1562. 

As reflected in the above quotation, the court in West
Texas Transmission made a distinction 
between a Aprice@ agreement and a Aterms and conditions@ agreement.  West Texas Transmission, L.P. v. Enron
Corporation, supra at 1562.  The
preferential purchase provision at issue in West Texas Transmission
permitted the rightholder to exercise its option Aon the same terms and conditions as set
forth in [a third party] offer or agreement to purchase.@  West Texas Transmission, L.P. v. Enron
Corporation, supra at 1562-63.  In
construing this language, the court held that the preferential purchase
provision did not restrict the property owner=s
Aability to strike its best deal and to
require [the rightholder] to match that bargain.@ 
West Texas Transmission, L.P. v. Enron Corporation, supra at
1563.  The court further noted that the
contract did not contain any specific conditions which limited the terms of
purchase which the property owner might negotiate with a potential purchaser.  West Texas Transmission, L.P. v. Enron
Corporation, supra at 1563.

Dooley argues that the preferential purchase
provision at issue in this appeal is a Aprice@ agreement rather than a Aterms and conditions@ agreement because the provision uses
the word Aprice.@ 
He contends that the preferential purchase provision=s use of the term Aprice@
prevented McDonald from accepting anything other than a fixed sum of money as
consideration for the Dooley Lease.  We
disagree with Dooley=s
restrictive construction of the term Aprice.@ 
While Aprice@ obviously includes an amount of money,
the common and ordinary meaning of Aprice@ does not exclude non-monetary forms of
consideration.  APrice@ is defined in BLACK=S LAW DICTIONARY 1207 (7th ed. 1999) as
A[t]he amount of money or other
consideration asked for or given in exchange for something else; the cost
at which something is bought or sold.@  (Emphasis added)








The court in West Texas Transmission
characterized a Aprice@ agreement as one which restricts the
terms of conveyance which the property owner might strike with a potential
purchaser.  As noted by the court, an
example of a  Aprice@ agreement would be one in which the
preferential purchase provision specifies the price at which the right may be
exercised.  Other than Dooley=s unduly restrictive construction of
the term Aprice,@ the preferential purchase provision at
issue does not contain any limitations on the bargain which McDonald might
negotiate with a potential purchaser.  We
sustain McMillan, McClymond, FOAG, Inc., and First
National Bank Albany/ Breckenridge=s
fourth point of error and McDonald, McDonald Investments, Inc., and Ole
Chaparral on Possum Kingdom=s
first issue to the extent that they attack the trial court=s interpretation of the preferential
purchase provision.

                                                    West
Texas Transmission Factors

Dooley additionally contends that the defendants= inclusion of the other leases rendered
their presentment defective because of the trial court=s
affirmative findings of the factors identified in West Texas Transmission.
The court in West Texas Transmission addressed the circumstances under
which the holder of a preferential purchase right could object to sale
conditions which were not otherwise prohibited by the preferential purchase
provision.  The court stated as follows:

[T]he
owner of property subject to a [preferential purchase right] remains master of
the conditions under which he will relinquish his interest, as long as those
conditions are commercially reasonable, imposed in good faith, and not
specifically designed to defeat the [preferential purchase] rights.  Where the owner meets these three standards,
the holder of the [preferential purchase right] lacks grounds to remove
specific conditions from the contract, or to extract other concessions as part
of the agreement.  (Citations omitted)

 

West Texas Transmission, L.P. v. Enron Corporation, supra
at 1563.  The trial court made findings
of fact to the extent that the defendants=
offer of the package of leases to Dooley was: (1) not commercially reasonable;
(2) not imposed in good faith; and (3) specifically designed to defeat Dooley=s preemptive rights.  Based upon these findings, the trial court
determined that Dooley was not obligated to purchase the package of leases in
order to exercise his preferential purchase right.








We do not believe that the factors identified in West
Texas Transmission are controlling on the question of whether or not the
defendants made a sufficient presentment to Dooley.[14]  Rather than addressing the sufficiency of the
property owner=s
presentment, the factors identified in West Texas Transmission deal with
the manner in which the holder of the preferential purchase right may respond
to the property=s owner
presentment in order to exercise the preferential purchase right.  Furthermore, the facts at issue in West
Texas Transmission are distinguishable from this appeal.  West Texas Transmission dealt with a
situation wherein the holder of the preferential purchase right objected to a
condition of sale which it found to be unreasonable.  West Texas Transmission, L.P. v. Enron
Corporation, supra at 1561-63.  The
objectionable condition required the holder of the preferential right to obtain
the approval of a federal agency in order to exercise its right to purchase a
pipeline.  West Texas Transmission,
L.P. v. Enron Corporation, supra at 1561-62.  West Texas Transmission did not deal
with a package conveyance of multiple properties wherein some of the properties
were not affected by the preferential purchase right.  Therefore, the circumstances in West Texas
Transmission  are distinguishable
from the facts in this case.   Moreover,
the factors identified in West Texas Transmission have not been
unanimously embraced by Texas courts as a correct interpretation of Texas
law.  In Abraham Investment Company v.
Payne Ranch, Inc., supra at 526-27, the Amarillo Court of Appeals
criticized West Texas Transmission=s
factors as being based upon the law of other jurisdictions rather than
Texas law.  Justice Murry
B. Cohen also questioned West Texas Transmission=s
purported interpretation of Texas law in a dissenting opinion in Texas State
Optical, Inc. v. Wiggins, 882 S.W.2d 8, 12 
(Tex.App. B
Houston [1st Dist.] 1994, no writ).

                                   The
Defendants Made a Sufficient Presentment to Dooley

The inclusion of the other leases in the offer
presented to Dooley did not violate the express terms of the preferential
purchase provision with respect to the terms of conveyance to which McDonald
and the purchasers could have agreed. 
Accordingly, we disagree with Dooley=s
contention that the defendants presented him with an invalid offer.  The defendants made a sufficient presentment
from a mechanical perspective if they made a reasonable disclosure of the terms
of the contemplated conveyance to Dooley. 
See Koch Industries, Inc. v. Sun Company, Inc., supra at
1212.  The preferential purchase
provision required that the notification include the highest bona fide price
offered.  The provision further required
the notification to be in writing and forwarded by registered mail.  McMillan=s
letter of March 9, 1998, provided Dooley with notice of the material terms upon
which McMillan and McClymond obtained the leases from
McDonald.  The letter also included the
documents exchanged between McDonald and McMillan in negotiating the
conveyance.  The de-livery of McMillan=s letter of March 9, 1998, to Dooley
conclusively establishes that the defendants made a reasonable disclosure of
the terms of conveyance to Dooley.








                                                            Comeaux v. Suderman

The Fourteenth Court of Appeals addressed many of
the issues present in this appeal in Comeaux
v. Suderman, 93 S.W.3d 215 (Tex.App.
- Houston [14th Dist.] 2002, no pet=n).   Comeaux is
one of the few Texas cases that has considered the enforcement of a
preferential purchase right in a package conveyance.  The rightholder in Comeaux possessed a preferential purchase right to
approximately one acre of real property which he leased in  the operation of a public fishing pier.  The owner of the leased property informed the
rightholder of his intention to convey it along with
some adjoining acreage for $350,000.00.  Comeaux v. Suderman,
supra at 217-18.  The rightholder initially advised the owner=s agent that he would not exercise his
preferential purchase right because he could not afford to pay
$350,000.00.  Comeaux
v. Suderman, supra at 218.  The property owner then conveyed the property
to a third-party purchaser as contemplated. 
Comeaux v. Suderman,
supra at 218.  

The rightholder
subsequently brought suit against the property owner and the third-party
purchaser claiming a breach of the preferential purchase right.  Comeaux
v. Suderman, supra at 218. The holder of the
preferential purchase right in Comeaux
asserted that his obligation to exercise the right was never triggered because
the property owner did not offer him the opportunity to purchase the leased
premises only.  Comeaux
v. Suderman, supra at 219.  This is essentially the same argument that
Dooley makes with respect to his allegation that the defendants presented him
with an invalid offer.  The court held
that a sufficient presentment occurred because the rightholder
received notice of the proposed sale.  Comeaux v. Suderman,
supra at 219. The holding in Comeaux
establishes that a sufficient presentment to the rightholder
occurs even though the offer includes 
property not covered by the preferential purchase right in the offer
presented to the rightholder.

We sustain McMillan, McClymond,
FOAG, Inc., and First National Bank Albany/ Breckenridge=s
first point of error and McDonald, McDonald Investments, Inc., and Ole
Chaparral on Possum Kingdom=s
second issue to the extent that they challenge the trial court=s determination that defendants did not
adequately provide Dooley with an opportunity to exercise his preferential purchase
right.

                                  The Effect of the Defendants= Presentment








Dooley takes the position that he was not required
to accept the other leases in order to exercise the right.  He further contends that the inclusion of the
other leases excused him from undertaking any action in order to retain his
preferential purchase right.  The trial
court agreed with each of these contentions by determining that Dooley was
entitled to exercise his preferential purchase right after trial.  McMillan, McClymond,
FOAG, Inc., and First National Bank Albany/Breckenridge also attack this
determination in their first point of error. 
McDonald, McDonald Investments, Inc., and Ole Chaparral on Possum
Kingdom raise the same contention in their first and third issues.  We agree with the trial court=s determination that Dooley was not
required to accept the other leases in order to exercise his preferential
purchase right.  However, we disagree
with the ruling that Dooley continued to possess  the opportunity to exercise his preferential
purchase right at the time of trial.

                                    Dooley
Was Not Required to Accept the Other Leases

                                        in
Order to Exercise his Preferential Purchase Right

 

As noted previously, Dooley=s
preferential purchase right matured into an enforceable option  when McDonald conveyed the leases to McMillan
and McClymond. 
A.G.E., Inc. v. Buford, supra at 673.  The exercise of an option is equivalent to
the acceptance of an offer under contract law. 
Texas State Optical, Inc. v. Wiggins, supra at 10-11.  As a general rule, an acceptance of an offer
must not change or qualify the terms of an offer; and, if it does, the offer is
rejected.  Texas State Optical, Inc.
v. Wiggins, supra at 10-11.  With
regard to an option, a purported acceptance containing a new demand, proposal,
condition, or modification of the terms of the offer ordinarily is not an
acceptance; it is a rejection.  Texas
State Optical, Inc. v. Wiggins, supra at 10-11.

Dooley is essentially seeking to invoke an
exception to the general rule which requires the holder of a preferential
purchase right to accept all of the terms of a property owner=s agreement with the third-party
purchaser in order to exercise the preferential purchase right.  Only a few Texas cases have addressed the
enforcement of preferential purchase rights in a package conveyance.   The court in Hinds v. Madison, 424
S.W.2d 61, 62 (Tex.Civ.App. - San Antonio 1967, writ
ref=d n.r.e.),
addressed a situation that is opposite to the facts surrounding Dooley=s claim.    








The rightholder in Hinds
possessed a preferential purchase right to approximately 2,849.28 acres that
were a part of a 14,818.63-acre ranch.  Hinds
v. Madison, supra at 62.  The owners
of the ranch entered into an agreement to convey the entire 14,818.63-acre
ranch.  Hinds v. Madison, supra at
62.  Even though the rightholder
only possessed a preferential purchase right to a portion of the ranch, he
asserted that he should be able to exercise his right with respect to the
entire ranch.  Hinds v. Madison, supra
at 64.  The court rejected the rightholder=s
contention by stating as follows: AWe
do not see how in any way [the rightholder=s] option or preference right to
purchase a portion of the property sought to be sold can be enlarged to cover
other lands owned by lessors, or can in any manner
cover anything except the property actually subject to the option.@ 
Hinds v. Madison, supra at 64. 

We agree with the reasoning employed by the court
in Hinds and believe that it is applicable to this appeal.  Assuming the defendants had only offered
Dooley the opportunity to purchase the Dooley 
Lease, the court=s
holding in Hinds would have prevented him from seeking to exercise his
preferential purchase right against the other leases in the conveyance.  If a rightholder is
not per-mitted to expand his preferential purchase
right to include property not covered by the provision, it would be improper
for him to be required to accept other property not covered by his preferential
purchase right in order to exercise his right.[15]  Furthermore, the fact that the Hill and
Johnson Leases were subject to separate preferential purchase rights is another
compelling reason for not requiring Dooley to accept the other leases in order
to exercise his preferential purchase right to the Dooley Lease. Accordingly,
we agree that Dooley possessed the right to exercise his preferential purchase
right as to the Dooley Lease without having to accept the other leases.

                                        Dooley=s Response to the Defendants= Presentment

Under the terms of the preferential purchase
provision at issue in this appeal, Dooley had 10 days after receiving written
notice of the contemplated conveyance to exercise his preferential purchase
right.  Dooley responded within the
10-day time period with the letter from his attorney dated March 18, 1998.  Dooley=s
attorney advised McMillan in the letter that the Aoffer
to give Mr. Dooley the option to buy our lease and all of the other properties
that were a part of the package with Mr. McDonald is hereby declined.@ 
The letter further indicated that Dooley might be interested in
discussing the acquisition of the Dooley Lease in the future.








In Comeaux,
the rightholder advised the owner=s agent that he would not exercise his
prefer-ential purchase right.  Comeaux
v. Suderman, supra at 218.  The rightholder did
not inquire about the specific terms and conditions of the proposed sale or
whether he could purchase only the leased premises.  Comeaux
v. Suderman, supra at 218.  The court determined that the rightholder=s
rejection of the offer at the time that it was offered to him prevented his
subsequent attempt to exercise the right. 
Comeaux v. Suderman,
supra at 219.

Comeaux is
factually analogous to Dooley=s
situation because the offer presented to the rightholder
included property not covered by the preferential purchase right.  Unlike the rightholder
in Comeaux, Dooley made inquires regarding the
terms and conditions of the proposed sale of the leases.  However, he subsequently informed McMillan
that he declined to exercise the offer presented to him.  This rejection occurred within the time
period specified in the preferential purchase provision for exercising the right.  Dooley made subsequent inquires regarding his
interest in only purchasing the Dooley Lease, but these inquires occurred after
the 10-day period expired.

The court determined in Comeaux
that a rejection of a Apackage@ offer prevented the right-holder=s subsequent attempt to exercise the
preferential purchase right as to the property covered by the right.  Dooley=s
act of rejecting the offer presented to him leads to the same result. The
presentment of a contemplated conveyance to a holder of a preferential purchase
right triggers a duty upon the rightholder to act
within the time period specified in the preferential purchase provision in
order to exercise the right.  A.G.E.,
Inc. v. Buford, supra at 673.  The rightholder=s
duty to act is an affirmative duty.  The
failure to act is tantamount to a rejection of the opportunity to exercise the
preferential purchase right.  Comeaux v. Suderman,
supra at 220.  The rightholder=s
Apower of acceptance@ does not continue indefinitely but
terminates on the expiration of the specified time period.  A.G.E., Inc. v. Buford, supra at 673; Martin
v. Lott, supra at 922.  The power of
acceptance also terminates by express rejection or by conduct clearly
inconsistent with an intention to purchase. Martin v. Lott, supra at
922.  Acquiescence in a transfer made in
violation of a preferential purchase right constitutes conduct inconsistent
with an intention to purchase.  Martin
v. Lott, supra at 922.








While Dooley was not required to accept the other
leases in order to exercise his preferential purchase right as to the Dooley
Lease, he was required to take affirmative steps within the time period
specified in the provision in order to preserve the viability of his option.  Dooley=s preferential purchase right expired when
he expressly declined the offer presented to him by McMillan without taking any
further action during the specified time period.  Afterwards, Dooley did not file the underlying
action to obtain the trial court=s assistance in enforcing the preferential
purchase provision until more than two years after being presented with the
offer.  Dooley did not exercise
his preferential purchase right until after trial.  

The court considered the timeliness of the
exercise of an option to purchase an oil and gas property in KMI Continental
Offshore Production Co. v. ACF Petroleum Co., 746 S.W.2d 238 (Tex.App. - Houston [1st Dist.] 1987, writ den=d). 
The court determined that a delay of 20 months in exercising the option
was unreasonable as a matter of law.  KMI
Continental Offshore Production Co. v. ACF Petroleum Co., supra at
243-44.  The court stated as follows in
reaching its holding: AThe
longer one delays in acting on an option concerning oil and gas property, the
easier one is able to speculate on the value of the property at the other=s expense.@
KMI Continental Offshore Production Co. v. ACF Petroleum Co., supra at
245.  The propriety of this principle is
readily apparent in this appeal given the dramatic rise in the price of natural
gas which occurred after the conveyance. 


Although Texas State Optical did not
involve a package conveyance, it is instructive as to the type of response
which Dooley should have made in order to preserve the viability of his
preferential purchase right.  Texas
State Optical, Inc. v. Wiggins, supra. 
The rightholder in Texas State Optical
objected to some of the terms of conveyance presented to it for acceptance by
the property owner.[16]  Texas State Optical, Inc. v. Wiggins,
supra at 9-10.  Even though the rightholder objected to some of the terms, it responded to
the offer by the specified date by notifying the property owner that it
intended to exercise its preferential purchase right subject to its objection
to the disputed terms. Texas State Optical, Inc. v. Wiggins, supra at
10.  The rightholder
also filed a declaratory judgment action prior to the date specified for
acceptance with regard to the disputed terms. 
Texas State Optical, Inc. v. Wiggins, supra at 10.  The court determined that the righholder=s
actions constituted a sufficient exercise of its preferential purchase
right.  Texas State Optical, Inc. v.
Wiggins, supra at 11.








Riley v. Campeau
Homes (Texas), Inc., 808 S.W.2d 184, 185 (Tex.App.
- Houston [14th Dist.] 1991, writ dism=d by agr.),
is another case involving the enforcement of a preferential purchase right in a
package conveyance.  In Riley, the
rightholders were tenants of an individual
condominium unit.  The owner of the unit
entered into an agreement to convey the unit along with several other properties
to a third-party purchaser. Riley v. Campeau Homes
(Texas), Inc., supra at 185.  The
material issue in the case was whether or not the preferential purchase right
was triggered by the package conveyance. 
Riley v. Campeau Homes (Texas), Inc., supra
at 185.  The court determined that the rightholders could exercise their preferential purchase
right even though the individual unit was to be conveyed in a package with
other properties.  Riley v. Campeau Homes (Texas), Inc., supra at 189.  The rightholders in
Riley responded to the package conveyance offered to them for accep-tance by demanding that their right of first refusal
be honored.  Riley v. Campeau Homes (Texas), Inc., supra at 186.  They also deposited $5,000.00 in earnest
money as a tender of their intended performance.  Riley v. Campeau
Homes (Texas), Inc., supra at 186.

We sustain McMillan, McClymond,
FOAG, Inc., and First National Bank Albany/ Breckenridge=s
first point of error.  We also sustain
McDonald, McDonald Investments, Inc., and Ole Chaparral on Possum Kingdom=s first and third issues.  In light of our determination that Dooley
failed to timely exercise his preferential purchase right to purchase the
Dooley Lease, we need not consider McMillan, McClymond,
FOAG, Inc., and First National Bank Albany/Breckenridge=s
second, third, fifth, sixth, seventh, eighth, ninth, tenth, eleventh,
thirteenth, fourteenth, fifteenth, sixteenth, seventeenth, and eighteenth
points of error.

                                                             Smith=s Liability Claim

The trial court entered the same findings of fact
and conclusions of law with respect to the liability aspect of Smith=s and Johnson=s
claims as it did with Dooley=s
claim. McMillan, McClymond, FOAG, Inc., and First
National Bank Albany/Breckenridge assert in their twenty-eighth point of error
that the trial court erred in holding McMillan, McClymond,
and FOAG, Inc. liable to Smith because they lack privity
of contract with him.  McMillan, McClymond, and FOAG, Inc. assert that, since they were not
parties to the farmout agreement, they cannot be
liable for the breach of the preferential purchase provision contained within
the farmout agreement.  We disagree with McMillan, McClymond, and FOAG, Inc.=s
lack-of-privity contention.








The written assignment which transferred the Hill
Lease to McMillan, McClymond, and FOAG, Inc.
expressly provided that A[t]his
assignment is made specifically subject to all of the terms and provisions of
that certain Farmout Agreement dated May 7, 1976
between [Smith] and Ole Chaparral Oil & Gas.@  Therefore, McMillan, McClymond,
and FOAG, Inc. expressly assumed responsibility for complying with the farmout agreement=s
obligations in the future.  See Jones
v. Cooper Industries, Inc., 938 S.W.2d 118, 124 (Tex.App.
- Houston [14th Dist.] 1996, writ den=d),
cert. den=d,
522 U.S. 1112 (1998).  At some point
during their operation of the Hill Lease, McMillan, McClymond,
and FOAG, Inc. elected to abandon the lease.  
McMillan, McClymond, and FOAG, Inc.=s decision to abandon the Hill lease
triggered an obligation on their part to provide Smith with an opportunity to
purchase the lease.  This obligation was
independent of the previous obligation which McDonald had to provide Smith with
notice of the lease=s
conveyance.  McMillan, McClymond, and FOAG, Inc. breached the preferential
purchase provision when they did not inform Smith of their intent to abandon
the Hill Lease.  Accordingly, the trial
court did not err in determining that McMillan, McClymond,
and FOAG, Inc. breached the preferential purchase provision.  McMillan, McClymond,
FOAG, Inc., and First National Bank Albany/Breckenridge=s
twenty-eighth point of error is overruled.








In their thirty-first point of error, McMillan, McClymond, FOAG, Inc., and First National Bank
Albany/Breckenridge assert that the evidence conclusively established that
Smith=s claim
was barred by laches, waiver, and estoppel.  Relying on evidence indicating that Smith was
aware of the conveyance soon after it occurred, they argue that Smith waived
his claim by waiting for more than  three
years prior to filing suit.  We do not
find that the evidence conclusively establishes the applicability of these
affirmative defenses.  McMillan, McClymond, FOAG, Inc., and First National Bank
Albany/Breckenridge=s
contention only focuses on the initial breach of the preferential purchase
provision which occurred when McDonald conveyed the lease without providing
notice of the conveyance to Smith.[17]  As noted in the previous paragraph, a second
breach of the preferential purchase provision occurred when McMillan, McClymond, and FOAG, Inc. subsequently abandoned the lease
without providing Smith with an opportunity to acquire it.  This breach occurred closer in time to the
date that Smith filed his claim. 
McMillan, McClymond, FOAG, Inc., and First
National Bank Albany/Breckenridge=s
thirty-first point of error is overruled.

McMillan, McClymond,
FOAG, Inc., and First National Bank Albany/Breckenridge=s
twenty-seventh, twenty-ninth, and thirtieth points of error also address Smith=s liability claim.  The twenty-seventh point of error attacks the
factual sufficiency of the evidence supporting the trial court=s determination that the preferential
purchase right was breached as to Smith. 
The twenty-ninth point of error attacks the factual sufficiency of the
evidence supporting the trial court=s
determination of the net fair market salvage value of the Hill Lease.  The thirtieth point of error attacks the
factual sufficiency of the evidence supporting the trial court=s determination that  McMillan, McClymond,
and FOAG, Inc. intentionally terminated the Hill Lease for lack of production.

These three points of error have been waived in
two respects.  First, McMillan, McClymond, FOAG, Inc., and First National Bank
Albany/Breckenridge have not briefed these points for our consideration.  See TEX.R.APP.P. 38.1(h).  Second, McMillan, McClymond,
FOAG, Inc., and First National Bank Albany/Breckenridge have filed a document
with the court indicating their waiver of all factual sufficiency points of
error.  Moreover, our review of the
record indicates the existence of factually sufficient evidence to support
these challenged findings.  McMillan, McClymond, FOAG, Inc., and First National Bank
Albany/Breckenridge=s  twenty-seventh, twenty-ninth, and thirtieth
points of error are overruled.

                                                            Johnson=s Liability Claim

The defendants attack Johnson=s recovery by asserting that he no
longer possesses the right to  enforce
the preferential purchase provision.[18]  They base this contention on several
conveyances made by Johnson after the execution of the farmout
agreement affecting the Johnson Lease. 
It is necessary for us to review these conveyances in order to address
the defendants=
contention.








Johnson obtained the oil and gas lease for the
five tracts of property comprising the Johnson Lease  in August 1978.  At the time that Johnson obtained the lease,
the surface and mineral estates of the property were owned by himself, his
mother, and another individual. 
Accordingly, Johnson was both a lessor and
lessee in the lease.  The resolution of
the issue before us is complicated by Johnson=s
dual capacities in the lease.  

As an owner of the mineral estate, Johnson
possessed five interests: (1) the right to develop, (2) the right to lease, (3)
the right to receive bonus payments, (4) the right to receive delay rentals,
and (5) the right to receive royalty payments. 
French v. Chevron U.S.A. Inc., 896 S.W.2d 795, 797 (Tex.1995); Altman
v. Blake, 712 S.W.2d 117, 118 (Tex.1986). 
By executing the lease, Johnson and the other lessors
granted a fee simple determinable interest in the mineral estate to Johnson as
the lessee/grantee of the lease.  Natural
Gas Pipeline Company of America v. Pool, 124 S.W.3d 188, 192
(Tex.2003).  In his capacity as the
lessee, Johnson acquired ownership of all the minerals in place owned by the lessors, subject to the possibility of reverter
back to the lessors or their successors-in-interest.  Natural Gas Pipeline Company of America v.
Pool, supra at 192.  In his capacity
as a lessor, Johnson only retained the right to
receive royalty payments and the right to receive delay rentals during the
duration of the lease.

Johnson executed the farmout
agreement affecting the Johnson Lease in his capacity as the  lessee of the lease.  Under the terms of the farmout
agreement, Johnson granted McDonald the right to earn an assignment of the
lease if McDonald successfully obtained production from the leased
acreage.  Johnson also reserved a
preferential purchase right in the farmout
agreement.  Johnson=s authority for reserving the
preferential purchase right in the farmout agreement
arose from his capacity as the lessee of the lease.  In the typical oil and gas lease, the lessee
does not own a pre-existing interest in the mineral estate.[19]  Johnson could have reserved the preferential
purchase right in the farmout agreement even if he
had not owned a preexisting interest in the mineral estate.








Pursuant to the terms of the farmout
agreement, Johnson assigned the lease to McDonald Investments, Inc. in a
written assignment dated March 6, 1979. 
As a result of the assignment, McDonald Investments, Inc. succeeded
Johnson as the lessee under the lease. 
Johnson, in his capacity as the original lessee of the lease, reserved
in the assignment a one-eighth overriding royalty interest.  Additionally, the assignment expressly stated
that it was made subject to the terms of the farmout
agreement.  The assignment=s reference to the farmout
agreement essentially constituted a recognition by the parties of the
preferential purchase right which Johnson reserved in the farmout
agreement.   Accordingly, upon the
assignment of the lease to McDonald Investments, Inc., Johnson possessed the
following interests:  (1) in his capacity
as the original lessee of the lease, Johnson possessed a one-eighth overriding
royalty interest and the preferential purchase right and (2) in his capacity as
a lessor of the lease, Johnson possessed the right to
receive royalty payments and delay rentals and the possibility of reverter with respect to the ownership of the mineral lease
subject to the duration of the lease.  

On May 15, 1979, Johnson and his mother conveyed
their ownership interest in only the surface estate of the southern three
tracts of the five tracts comprising the Johnson Lease to McDonald Investments,
Inc.  On June 2, 1983, Johnson and his
mother conveyed their ownership interest in the surface and mineral estates of
the northern two tracts of the five tracts comprising the Johnson Lease to
Billy Fred Akers.  In this deed to Akers,
Johnson specifically reserved the one-eighth overriding interest previously
reserved in the assignment between Johnson and McDonald Investments, Inc.  Also, on June 2, 1983, Johnson and his mother
conveyed their ownership interest in the mineral estate of the southern three
tracts of the five tracts comprising the Johnson Lease to Akers.  As a result of these conveyances, Johnson no
longer owned any part of the surface or mineral estates of the five tracts
comprising the Johnson Lease.  On April
1, 1992, Johnson conveyed his one-eighth overriding royalty interest to John C.
Nabors.








The issue we must resolve is whether or not
Johnson continued to possess the preferential purchase right after the
subsequent conveyances referenced in the preceding paragraph.   None of the conveyance documents contained
any reference to the preferential purchase right.  A deed will be construed to confer upon the
grantee the greatest estate that the terms of the instrument will permit.  Lott v. Lott, 370 S.W.2d 463, 465
(Tex.1963); Waters v. Ellis, 312 S.W.2d 231, 234 (Tex.1958).  The defendants rely upon this rule to argue
that Johnson no longer possesses the preferential purchase right because he did
not specifically reserve it in any of the conveyances.  They contend that Johnson conveyed the
preferential purchase right to Akers when Johnson conveyed the mineral estate
to him. The defendants also cite the holding in Stone v. Tigner,
165 S.W.2d 124, 127 (Tex.Civ.App. - Galveston 1942,
writ ref=d),
wherein the court held that a right of first refusal to purchase real property
is a covenant running with the land.  In
reliance upon this holding, the defendants argue that Johnson can no longer
possess the preferential purchase right because he no longer possesses a real
property interest in the Johnson Lease. 

We disagree with the defendants= contention that Johnson no longer
possesses the preferential purchase right he reserved in the farmout agreement. 
Johnson=s
situation is unique because he was both a lessor and lessee
in the lease.  His status as a lessor arose by virtue of his pre-existing ownership
interest in the mineral estate.  The
ownership interests which Johnson subsequently conveyed  to McDonald Investments, Inc. and Akers were
his preexisting ownership interests in the surface and mineral estates.[20]  In relation to the lease, the interests which
Johnson subsequently conveyed to McDonald Investments, Inc. and Akers were his
interests as a lessor to the lease as opposed to his
interests arising from his capacity as a lessee of the lease. Johnson reserved
the preferential purchase right in the farmout
agreement in his capacity as the lessee of the lease.  We do not believe that the conveyance of
interests which Johnson possessed in his capacity as a lessor
also included an interest which arose from his capacity as a lessee of the
lease.  The granting clauses of the
conveyance instruments only referenced Johnson=s
real property interests.[21]  Accordingly, the terms of the instruments
will not permit a construction that Johnson also conveyed a contractual right
affecting the property.   Lott v.
Lott, supra at 465; Waters v. Ellis, supra at 234.








We agree with the defendants= contention that the preferential
purchase right is a covenant running with the land.  Stone v. Tigner,
supra at 127.  The practical effect
of the right being a covenant running with the land is that McMillan, McClymond, and FOAG, Inc. were bound by the preferential
purchase provision upon obtaining the Johnson Lease.  However, we disagree with the assertion that
Johnson was required to own a real property interest in order to enforce the
right.  By the terms of the farmout agreement and the written assignment of the lease
from Johnson to McDonald Investments, Inc., the parties were aware that Johnson
would not be possessing a real property interest in his capacity as the
original lessee of the lease after the assignment occurred.  We are unwilling to impose a requirement
which is contrary to the intentions of the parties as evidenced  in the documents that created the
preferential purchase right.  McMillan, McClymond, FOAG, Inc., and First National Bank
Albany/Breckenridge=s
nineteenth point of error and McDonald, McDonald Investments, Inc., and Ole
Chaparral on Possum Kingdom=s
fifth issue are overruled.

McMillan, McClymond,
FOAG, Inc., and First National Bank Albany/Breckenridge attack the factual
sufficiency of the evidence supporting Johnson=s
recovery in their twentieth, twenty-first, twenty-second, twenty-third,
twenty-fourth, twenty-fifth, and twenty-sixth points of error.  They have indicated in their brief that these
points are contingent upon the court sustaining their nineteenth point of
error.  Accordingly, since we have overruled
McMillan, McClymond, FOAG, Inc., and First National
Bank Albany/Breckenridge=s
nineteenth point, we need not consider their twentieth, twenty-first,
twenty-second, twenty-third, twenty-fourth, twenty-fifth, and twenty-sixth
points of error.

                                                                  Attorney=s Fees

McMillan, McClymond,
FOAG, Inc., and First National Bank Albany/Breckenridge=s
thirty-second point of error attacks the trial court=s
award of attorney=s fees to
Dooley.  The trial court awarded Dooley
attorney=s fees
for work performed through trial in the amount of $44,500.00.  The trial court also awarded appellate
attorney=s fees to
Dooley in the aggregate amount of $17,500.00. 
The trial court found that these awards were equitable and just.

A trial court Amay
award costs and reasonable and necessary attorney=s
fees as are equitable and just@
in a declaratory judgment proceeding.  See
TEX. CIV. PRAC. & REM. CODE ANN. '
37.009 (Vernon 1997). The grant or denial of attorney=s
fees in a declaratory judgment action lies within the discretion of the trial
court, and its judgment will not be reversed on appeal absent a clear showing
of abuse of discretion.  Oake v. Collin County, 692 S.W.2d 454, 455
(Tex.1985).  McMillan, McClymond, FOAG, Inc., and First National Bank
Albany/Breckenridge contend that the trial court abused its discretion in
awarding attorney=s fees to
Dooley because he should not have prevailed at trial.  However, the fact that Dooley should not have
prevailed at trial does not necessarily resolve the issue of attorney=s fees. 
A trial court may, in its discretion, award attorney=s fees to the nonprevailing
party in a declaratory judgment action.  State
Farm Lloyds v. Borum, 53 S.W.3d 877, 894 (Tex.App. ‑ Dallas 2001, pet=n
den=d).








As was the case in Borum,
we have determined that the trial court erred in resolving the issue of
liability in favor of Dooley.  State
Farm Lloyds v. Borum, supra at 894.  Even though the trial court could have
awarded attorney=s fees to
Dooley as a nonprevailing party, the record does not
indicate whether the award of Dooley=s
attorney=s fees
would also be equitable and just in light of our holding.  McMillan, McClymond,
FOAG, Inc., and First National Bank Albany/Breckenridge=s
thirty-second point of error is sustained in part.  The trial court=s
award of attorney=s fees to
Dooley is reversed and remanded to the trial court for consideration in light
of this opinion.

McMillan, McClymond,
FOAG, Inc., and First National Bank Albany/Breckenridge raise the issue of the
trial court=s denial
of their request for attorney=s
fees with respect to Dooley=s
claim in their thirty-fifth point.  We
have determined that McMillan, McClymond, FOAG, Inc.,
and First National Bank Albany/Breckenridge should have prevailed on Dooley=s claim.  For the same reason that we are reversing and
remanding the award of attorney=s
fees to Dooley, the trial court=s
denial of McMillan, McClymond, FOAG, Inc., and First
National Bank Albany/Breckenridge=s
request for attorney=s
fees with respect to Dooley=s
claim is reversed and remanded to the trial court for con-sideration
in light of our holding.  McMillan, McClymond, FOAG, Inc., and First National Bank
Albany/Breckenridge=s
thirty-fifth issue is sustained in part. 
Upon remand, the trial court may award costs and reasonable attorney=s fees as are equitable and just to
either Dooley or McMillan, McClymond, FOAG, Inc., and
First National Bank Albany/Breckenridge with respect to Dooley=s claim.








McMillan, McClymond,
FOAG, Inc., and First National Bank Albany/Breckenridge attack the award of
attorney=s fees to
Smith and Johnson in their thirty-third and thirty-fourth points of error,
respectively.  McMillan, McClymond, FOAG, Inc., and First National Bank Albany/
Breckenridge=s
thirty-sixth and thirty-seventh points of error challenge the trial court=s denial of their attorney=s fees with respect to Smith=s and Johnson=s
claims.  McMillan, McClymond,
FOAG, Inc., and First National Bank Albany/Breckenridge premise their argument
under these points of error on the contention that they should have prevailed
on Smith=s and
Johnson=s
claims.  We have determined that the
trial court did not err in entering judgment in favor of Smith and
Johnson.  The trial court=s award of attorney=s fees to Smith and Johnson is
supported by our determination that they were entitled to  prevail on their claims.  The trial court=s
award of attorney=s fees
with respect to Smith=s
and Johnson=s claims
were not arbitrary or capricious. 
McMillan, McClymond, FOAG, Inc., and First
National Bank Albany/Breckenridge=s
thirty-third, thirty-fourth, thirty-sixth, and thirty-seventh points of error
are overruled.

                                              McMillan,
McClymond, FOAG, Inc., and

                                              First
National Bank Albany/Breckenridge=s

                                                        Miscellaneous
Points of Error

 

McMillan, McClymond,
FOAG, Inc., and First National Bank Albany/Breckenridge assert in their
thirty-eighth point of error that the trial court erred in rendering judgment
in favor of Dooley, Smith, or Johnson based upon the statute of frauds.  It is not necessary for us to consider this
point of error in light of our previous holdings.  McMillan, McClymond,
FOAG, Inc., and First National Bank Albany/Breckenridge globally assert in
their thirty-ninth point of error that the trial court erred in not entering
the additional and amended findings of fact which they submitted.  McMillan, McClymond,
FOAG, Inc., and First National Bank Albany/Breckenridge have not adequately
briefed this issue for our consideration, thereby waiving the contention.  See Rule 38.1(h).  McMillan, McClymond,
FOAG, Inc., and First National Bank Albany/Breckenridge=s
thirty-ninth point of error is overruled.

                                                  Dooley
& Johnson=s
Appellate Issues

Dooley and Johnson bring six issues attacking the
trial court=s
findings that McMillan,  McClymond, and FOAG, Inc. had an honest and reasonable
belief in the superiority of their title to the Dooley and Johnson Leases over
Dooley=s and
Johnson=s
respective claims to the leases.  These Agood faith trespasser@ findings permitted McMillan, McClymond, and FOAG, Inc. to deduct  the operating costs they incurred from the
recoveries obtained by Dooley and Johnson. 
Dooley and Johnson=s
first, third, and fifth issues address Dooley=s
claim.  Their second, fourth, and sixth
issues address Johnson=s
claim.








The trial court=s
findings that McMillan, McClymond, and FOAG, Inc.
were good faith trespassers are based on the court=s
previous determinations that they were, in fact, trespassers.  McMillan, McClymond,
and FOAG, Inc. argue that they were not trespassers as a matter of law because
they took possession of the Dooley and Johnson Leases pursuant to the written
assignments of leases  granted in their
favor from McDonald.  Trespass has been
defined as unlawful interference with one=s
person, property, or rights.  See
First National Bank of Eagle Pass v. Levine, 721 S.W.2d 287, 289
(Tex.1986).  With respect to Dooley=s issues, we have determined that his
preferential purchase right expired. 
Accordingly, McMillan, McClymond, and FOAG,
Inc. were not trespassers as a matter of law as to Dooley because Dooley did
not possess a property interest in the Dooley Lease which could be subject to trespass.  Dooley and Johnson=s
first, third, and fifth issues are overruled.

The trial court=s determination that McMillan, McClymond, and FOAG, Inc. committed a  trespass on the Johnson Lease presents a more
difficult question to resolve.  We have
sustained the trial court=s
finding that the preferential purchase provision was breached as to Johnson.
The trial court found that McMillan, McClymond, and
FOAG, Inc. purchased the Johnson Lease from McDonald for zero
consideration.  In making this
determination, the trial court essentially found that Johnson should have been
given the opportunity to obtain the Johnson Lease without paying anything for
it.  Johnson sought and obtained the
remedy of specific performance whereby he obtained owner-ship of the Johnson
Lease free of cost.  The trial court also
awarded Johnson all of the net revenue derived from the Johnson Lease since the
conveyance in the amount of $10,122.43. Dooley and Johnson contend in their
second and sixth issues that the trial court=s
good faith trespasser determination as to the Johnson Lease is not supported by
legally or factually sufficient evidence. 
They contend in their fourth issue that the trial court erred in
reducing Johnson=s
recovery by the costs which McMillan, McClymond, and
FOAG, Inc. incurred in operating the Johnson Lease.








Even though Johnson=s
preferential purchase right was breached, he did not have a sufficient interest
in the property to assert a claim for trespass. 
The gist of an action for trespass to realty is the injury to the right
of possession.  Pentagon Enterprises
v. Southwestern Bell Telephone Company, 540 S.W.2d 477, 478 (Tex.Civ.App. - Houston [14th Dist.] 1976, writ ref=d n.r.e.).  Prior to obtaining relief from the trial
court, Johnson did not possess a right of possession with respect to the
Johnson Lease.  The court in Pentagon
Enterprises addressed a similar situation. 
The plaintiff asserting the trespass claim in Pentagon Enterprises
was a vendee under an executory contract.  Pentagon Enterprises v. Southwestern Bell
Telephone Company, supra at 478. 
While the plaintiff obviously had some rights in the property, it did
not have a right of possession to the property at the time the trespass was
alleged to have occurred.  Pentagon
Enterprises v. Southwestern Bell Telephone Company, supra at 478. The court
upheld the denial of the plaintiff=s
claim as a result of its lack of the right of possession.  Dooley and Johnson=s
second, fourth, and sixth issues are overruled.

                                                              This
Court=s
Decision

The trial court=s
judgment awarding Dooley title to the Dooley Lease is reversed and rendered in
favor of McMillan, McClymond, and First National Bank
Albany/Breckenridge.  The trial court=s judgment permitting Dooley to
designate the operator of the Dooley Lease is also reversed and rendered.  Furthermore, the trial court=s judgment terminating any contracts
entered into by defendants regarding the Dooley Lease is reversed and
rendered.  The trial court=s judgment awarding title to and possession
of all equipment on the Dooley Lease to Dooley is also reversed and
rendered.  Finally, the trial court=s judgment awarding Dooley all future
proceeds of oil and gas produced from the Dooley Lease is reversed and
rendered. 

The trial court 
made a division of the revenue previously generated from the Dooley
Lease.  The trial court awarded
$102,517.00 of this past revenue to McMillan, McClymond,
and First National Bank Albany/Breckenridge to complete the purchase of the
Dooley Lease.  The remaining amount of
past revenue was awarded to Dooley as well as all future revenue generated from
the Dooley Lease. We have determined that Dooley was not entitled to receive
any revenue generated from the lease arising from the preferential purchase
provision.  The trial court=s award of any revenue generated from
the Dooley Lease to Dooley is reversed, and the issue of the amount of revenue
from the Dooley Lease owed to McMillan, McClymond,
and First National Bank Albany/Breckenridge is remanded to the trial court for
an accounting and distribution.

The trial court=s
award of attorney=s fees to
Dooley as well as the trial court=s
denial of attorney=s fees to
McMillan, McClymond, FOAG, Inc., and First National
Bank Albany/ Breckenridge with respect to Dooley=s
claim are reversed and remanded.

The remainder of the trial court=s judgment is affirmed.

 

AUSTIN McCLOUD

July 30,
2004                                                                           SENIOR
JUSTICE

Panel
consists of: Wright, J., and

McCall,
J., and McCloud, S.J.[22]











     [1]The
original lessees of the Dooley Lease were Dooley and Louis Donnell, Jr.  The trial court determined that Donnell
conveyed his rights arising from the preferential purchase provision to
Dooley.  Donnell is not a party to this
appeal.  References to Donnell=s previous ownership interest in the Dooley Lease have
been omitted for the sake of brevity and clarity.  





     [2]The  farmout agreement
for the Dooley Lease identified AOle Chaparral on Possum Kingdom@ as a partnership. 
Orison F. AMack@ McDonald, II, (McDonald) executed the farmout agreement on behalf of Ole Chaparral on Possum
Kingdom in the stated capacity of a partner.





     [3]Donnell
was also an original lessee of the Hill Lease along with Smith.  Donnell did not assert a claim with respect
to the Hill Lease.  References to Donnell=s ownership interest in the Hill Lease have been
omitted for the sake of brevity and clarity.





     [4]The
farmout agreement for the Hill lease identified AOle Chaparral Oil and Gas@ as a
partnership.  McDonald executed the farmout agreement on behalf of Ole Chaparral Oil and Gas in
the stated capacity of a partner.





     [5]In
addition to the three leases at issue in this appeal, McDonald owned an
additional lease which he sought to convey in the package.  The parties referred to the fourth lease as
the ABarnett-Davidson Lease.@





     [6]Dooley,
Smith, and Johnson are collectively referred to as Aplaintiffs@ in this
opinion.  





     [7]At
the time that Dooley=s attorney sent this letter to McMillan, he apparently
was not aware that the Hill and Johnson Leases were also subject to
preferential purchase rights. 





     [8]McClymond testified that, at the time of the conveyance,
natural gas prices were in the range of $1.50 per MCF.  Natural gas prices had increased to a high of
$9.00 per MCF in the winter of 2000.  McClymond stated that the price of natural gas was
approximately $3.00 per MCF at the time of trial.





     [9]McDonald
Investments, Inc. and Ole Chaparral on Possum Kingdom are entities owned and
controlled by McDonald.   FOAG, Inc. is
an operating company owned by McMillan. 
McMillan and McClymond designated FOAG, Inc.
as the operator of the leases. First National Bank Albany/Breckenridge provided
the financing for McMillan and McClymond=s purchase of the leases.  The Bank filed various deeds of trust in the
official public records with respect to the Dooley Lease to reflect its
security interest in the property. 
McDonald, McDonald Investments, Inc., Ole Chaparral on Possum Kingdom,
McMillan, FOAG, Inc., McClymond, and First National
Bank Albany/Breckenridge are collectively referred to as Adefendants@ in this
opinion.





     [10]Only
McMillan, McClymond, FOAG, Inc., and First National
Bank Albany/Breckenridge pleaded the affirmative defense of laches.





     [11]The
trial court determined the net fair market salvage value of the Hill Lease to
be $15,000.00.  The trial court awarded
only one-half of this amount to Smith as a result of Donnell=s interest as an original lessee of the Hill Lease.





     [12]McDonald,
McDonald Investments, Inc., and Ole Chaparral on Possum Kingdom pleaded the
affirmative defenses of limitations, estoppel, and
waiver in the trial court pleadings. 





     [13]We
note that Dooley filed his claim within the applicable four-year limitations
period for breach of contract actions.  See
TEX. CIV. PRAC. & REM. CODE ANN. ' 16.004
(Vernon 2002).  We express no opinion as
to the effect of the expiration of the applicable limitations period on a rightholder who has not been notified of a conveyance as
required by the preferential purchase right. 






     [14]McMillan,
McClymond, FOAG, Inc., and First National Bank
Albany/Breckenridge attack the legal sufficiency of the evidence supporting
these findings in their twelfth point of error. 
We do not address their twelfth point of error in light of our
determination  that the West Texas
Transmission factors are not controlling on the issue of presentment.





     [15]The
court in Comeaux cited Hinds for the
proposition that a holder of a preferential purchase right has neither the
right nor the obligation to purchase more than the property covered by the
provision.  Comeaux
v. Suderman, supra at 221 n. 2.





     [16]The
rightholder asserted that the disputed terms were
impermissible under the factors identified in West Texas Transmission.  Texas State Optical, Inc. v. Wiggins,
supra at 11.





     [17]With
respect to the initial breach of the preferential purchase provision, Smith
filed his claim within the applicable four-year limitations period for breach
of contract actions.  See TEX.
CIV. PRAC. & REM. CODE ANN. ' 16.004 (Vernon 2002).





     [18]McMillan,
McClymond, FOAG, Inc., and First National Bank
Albany/Breckenridge present this complaint in their nineteenth point of
error.  McDonald, McDonald Investments,
Inc., and Ole Chaparral on Possum Kingdom make this assertion in their fifth
issue.





     [19]We
use the term Apreexisting@ to
indicate that Johnson possessed an ownership interest in the mineral estate
prior to obtaining the lease.





     [20]We
use the term Asubsequently@ to
denote the conveyances occurring after Johnson assigned the lease to McDonald
Investments, Inc.





     [21]The
granting clauses in the deeds to McDonald Investments, Inc. and Akers stated
that Johnson conveyed Aall that certain lot, tract or parcel of land,@ Aall of the following described real property,@ and Aall of our undivided interest in and to all of the oil,
gas and other minerals in and under, and that may be produced from the
following described land.@





     [22]Austin
McCloud, Retired Chief Justice, Court of Appeals, 11th District of Texas at
Eastland sitting by assignment.