**CENTURY BASS CLUB,**
**et al., Appellants,**

v.

**Randy MILLENDER, et al., Appellees.**

**No. 10–96–163–CV.**

Court of Appeals of Texas,
Waco.

July 23, 1997.

Rehearing Overruled Aug. 20, 1997.

---

Elvin E. Smith, III, Strasburger & Price, Dallas, for appellant.

J. Val Fulcher, Teague, for appellee.

Before DAVIS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

VANCE, Justice.

Randy Millender and Marc Holmes entered a bass-fishing contest sponsored by Century Bass Club and apparently won. Because Millender did not have his fishing license with him during the tournament, he and Holmes were disqualified by tournament officials. They sued Century Bass Club and the officials, Kevin Probert and John Heidemann, (collectively Century Bass) after being denied the first prize, a fishing boat and trailer. After a jury trial, the fishermen were awarded $14,000 as the value of the boat and trailer, plus attorney's fees. Century Bass appeals.

### FACTS

Millender and Holmes, fishing as a team, appeared to have won first place in a contest held by the Century Bass Club on Richland Chambers Reservoir on April 2, 1995. Everyone agrees that this team brought in the best stringer of fish within the required period. Before the prizes were awarded, however, tournament officials asked to see their state fishing licenses. Millender did not have his license on his person but said he could get it right away. Heidemann, one of the tournament judges, told him he had 30 minutes to show it to him before the prizes would be awarded. Millender made his license available to the tournament judges as requested within that time, but he and Holmes were still disqualified solely because Millender didn't have his license on his person during the contest. The fishing boat and trailer were awarded to other contestants. Millender and Holmes then sued, and a jury awarded them $14,000 plus attorney's fees. They sought but did not receive an award of punitive damages.

### THE APPEAL

Century Bass's twelve-point appeal focuses on the absent fishing license, its right to interpret its tournament rules, and the public policy considerations of allowing participation in fishing contests by unlicensed fishermen. Century Bass also complains of two evidentiary rulings—allowing testimony it describes as an attempt to modify the contract and allowing impeachment of one of its witnesses on a collateral issue.

At the outset, we observe that Century Bass's position in the suit is premised on one or both of two propositions: (1) all statutes and regulations relating to the issuance of fishing licenses in the State of Texas were automatically incorporated into its tournament rules; (2) its tournament officials had the absolute right to interpret the rules and their interpretation was conclusive. Because we disagree with both propositions and because the evidence shows that Millender and Holmes complied with the tournament rules as written, many of Century Bass's points will be summarily overruled.

Six undisputed facts lie at the heart of this controversy:

- Millender and Holmes produced the winning stringer of fish;

- the printed tournament rules do not mention fishing licenses;

- both participants had obtained fishing licenses issued by the State;

- Millender was not carrying his license during the tournament;

- both participants produced their licenses after being asked for them by tournament officials; and
- some information on the actual licenses, left blank when issued, had not been filled in.

## THE FISHING LICENSES

Century Bass's first three points concern the actual possession of fishing licenses. The first point of error is that Millender and Holmes did not comply with the strict terms of the "offer," *i.e.*, tournament rules, because (1) Millender did not have his fishing license on his person during the tournament and (2) both Millender and Holmes had not completed some of the blanks on their licenses. The second and third points of error contend that the trial court should have granted Century Bass's motion for declaratory judgment based on the undisputed evidence concerning the missing license and that there was either no evidence, or alternatively insufficient evidence, to support the jury's finding that Millender and Holmes had strictly complied with the terms of the offer. The fourth and fifth points of error assert that the trial court erred when it refused to instruct the jury that it was "illegal" to fish without having the fishing license on one's person and that a fishing license was not valid unless all of the requested information was completed.

The parties agree that tournament rules such as these are governed by the law of contracts. They also agree that there was no mention or requirement concerning licenses in the printed rules, which had been promulgated solely by Century Bass. However, Century Bass asserts that all State fishing laws are incorporated by implication into all tournament rules and argues that as a matter of public policy all participants in fishing tournaments should be properly licensed.

The evidence is undisputed that both Millender and Holmes had been issued fishing licenses by the State of Texas prior to the date of the tournament. Section 46.001 of the Parks and Wildlife Code, as it existed at the time of the tournament, provided:

No person may fish in the public water of this state unless he has *obtained* a fishing license issued under this subchapter, except as provided by Sections 46.0012 and 46.002 of this code.

Act of May 28, 1989, 71st Leg., R.S., ch.799, § 1, 1989 Tex. Gen. Laws 3609 (still codified as Tex. Parks & Wild.Code Ann. § 46.001 (Vernon Supp.1997)) (emphasis added).[1] Section 46.0085(b) provided at that time: "A license and tag issued under this chapter is not valid until the person to whom it is issued completes all required information on the license." Act of May 19, 1993, 73rd Leg., R.S., ch. 457, § 2, 1993 Tex. Gen. Laws 1835 (codified as § 46.0085 (Vernon Supp.1997)). Section 46.015 of the Code provides:

(a) A person who violates a provision of this subchapter or, except as provided by Subsection (b) of this section, who fails or refuses to show an officer his license or tag on the request of the officer commits an offense that is a Class C Parks and Wildlife Code misdemeanor.

(b) If on or before the trial of any person charged with the failure or refusal to show an officer a license or tag issued under this subchapter, the person produces for the court or the prosecuting attorney the proper fishing license or tag issued to the person and valid at the time of the offense, the court having jurisdiction of the suit shall dismiss the charge.

*Id.* § 46.015 (Vernon Supp.1997).

We turn now to the tournament rules. If a written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law. *Coker v. Coker*, 650 S.W.2d 391, 392 (Tex.1983). Language should be given its plain grammatical mean-

---

1. Afterward, the legislature added a sentence to section 46.001: "The commission by rule may prescribe requirements relating to possessing a license required by this subchapter." TEX. PARKS & WILD.CODE ANN. § 46.001 (Vernon Supp.1997). Some classes of persons are now exempt from the licensing requirements. *Id.* § 46.002 (Vernon Supp.1997). Century Bass does not say what it would do about allowing exempt persons to participate in a tournament, what procedures it would follow if an exempt person "won" a tournament, or how it would determine who is exempt.

ing unless it definitely appears that the intention of the parties would be thereby defeated. *Reilly v. Rangers Management, Inc.*, 727 S.W.2d 527, 529 (Tex.1987). In arriving at the meaning of its language, an unambiguous instrument should be considered from its "four corners." *French v. Chevron U.S.A., Inc.*, 896 S.W.2d 795, 797 (Tex.1995). Courts will avoid when possible a construction which is unreasonable, inequitable, and oppressive. *Reilly*, 727 S.W.2d at 529; *Hicks v. Smith*, 330 S.W.2d 641, 646 (Tex.Civ.App.—Fort Worth 1959, writ ref'd n.r.e.).

■ Because the tournament was held on Richland Chambers Reservoir, part of the waters of the State of Texas, Century Bass believes that it is entitled to enforce its strict interpretation of all of the requirements of the State related to fishing licenses.[2] It argues that, although no requirement concerning licenses is specifically mentioned in its tournament rules, the term "legal tournament fish"[3] should be interpreted to mean fish caught legally in all respects, including the provisions related to the actual carrying of the licenses by the licensees and the completion of all blanks on the license after issuance. We disagree. Looking within the four corners of the rules and considering the absence of any other provision related to licensing, we believe that the word "legal" defines the fish, not the fishermen. *Coker*, 650 S.W.2d at 393; *French*, 896 S.W.2d at 796. Thus, it appears that Century Bass elected not to include as part of its rules a requirement that it be furnished evidence that participants were in fact licensed.

■ At no time on the day of the tournament was the validity of the licenses challenged; the only question was whether Millender actually had a fishing license.[4] Because no requirement was made about licenses in the tournament rules and because no question was raised by Century Bass

about the legality of the fish themselves, we believe that the evidence conclusively shows that the fishermen strictly complied with the tournament rules promulgated by Century Bass. Thus, Century Bass was not entitled to a declaratory judgment and there is no question about the sufficiency of the evidence to support the jury's finding about strict compliance. We overrule Century Bass's first, second, and third points of error.

Century Bass's fourth and fifth points assert that the court erred in failing to instruct the jury that it was "illegal" for the fishermen to participate in the contest without (a) having their fishing licenses on their persons and (b) having fully completed all of the blank spaces on the licenses. It argues that these are controlling issues of law and that the court should have informed the jury about them. Because we have determined that the tournament rules did not include any requirement about licenses, these points were immaterial to the jury's consideration. Thus, the court did not err when it refused to so instruct the jury. *See* TEX.R. CIV. P. 277. We overrule points four and five.

## GOOD FAITH ARGUMENTS

The court asked the jury to make six determinations: (1) whether Millender and Holmes strictly complied with the "rules and regulations governing the tournament"; (2) whether Century Bass and each individual defendant failed to act in good faith in disqualifying them from the tournament; (3) the amount of actual damages resulting from their disqualification; (4) whether any failure to act in good faith was willful; (5) the amount of punitive damages; and (6) the amount of attorney's fees. The jury answered the first question affirmatively and the second affirmatively as to Century Bass and defendant Heidemann only. Based on these findings, it awarded $14,000 actual damages and $10,000 in attorney's fees. The

**2.** Licenses were required, of course, because simply participating in a tournament would not in and of itself convey the privilege of fishing in state waters.

**3.** The rules state: "Tournament winners will be determined by the highest total weight of the one (1) day of *legal* tournament fish which are large-

mouth or Kentucky spotted bass that exceed fourteen (14) inches in length, according to state law. Maximum number of bass is five (5) per team." (Emphasis added).

**4.** Holmes produced his license when asked for it.

jury determined that no willful conduct was involved, so it did not reach the question of punitive damages.

Century Bass's eighth and ninth points allege the trial court erred in: (1) submitting a question about Century Bass's lack of good faith, and (2) instructing the jury about good faith in a manner that ignored the right of the tournament director to interpret the rules. Point ten asserts that the evidence is legally or factually insufficient to support the finding that Century Bass lacked good faith. These points rest on Century Bass's position that it had the right, under the rules, to require that the fishermen actually carry their fishing licenses.

The trial court submitted the "good faith" question over Century Bass's objection. Century Bass maintains that questions about Defendant Heidemann's actions should not have been permitted because the tournament rules provided that interpretation of the rules was reserved to the discretion of tournament officials, whose decisions were final.

■ We agree that the tournament rules allowed the officials to "interpret" them. The discretion given by that provision, however, does not carry with it the right to add to the rules. We have decided that, under a reasonable interpretation of the unambiguous rules, the term "legal" relates to the fish. Thus, the requirement imposed by Century Bass that participants actually carry their fishing licenses on their persons, on penalty of disqualification from the tournament, was not an interpretation of the rules; rather, it was an additional requirement. Because the fishermen complied with the tournament rules as written, good faith was not a controlling issue on the question of their right to recover actual damages. In that respect, the question was surplusage.

■ Millender and Holmes were seeking punitive damages, which the jury did not award. The record contains evidence that Century Bass had taken conflicting positions about the rules, raising the inference that officials did not want or intend to allow Millender and Holmes to win the tournament.

A simple breach of contract will not, however, ordinarily lead to punitive damages. *Southwestern Bell Telephone Co. v. DeLanney,* 809 S.W.2d 493, 494 (Tex.1991) ("When the only loss is the subject matter of the contract, the plaintiff's action is ordinarily on the contract.") And, there is no duty of good faith and fair dealing implied in a contract, absent some "special relationship." *See Great American Ins. Co. v. N. Austin Mun. Util. Dist. No. 1,* 908 S.W.2d 415, 418 (Tex. 1995) (citing *English v. Fischer,* 660 S.W.2d 521, 522 (Tex.1983)). Thus, the question was not proper as a determination about Century Bass's action after Millender and Holmes complied with the contract nor as a predicate to the question about whether the failure to act in good faith was willful. Because the jury did not find willfulness on the part of Century Bass, no harm flowed from the question. We cannot say that the submission of this improper question was reasonably calculated to cause or did cause the rendition of an improper judgment. *See* Tex.R.App. P. 81(b)(1). We overrule points eight and nine and do not reach point ten.

■ The eleventh point urges us to find that the tournament rules "as modified" violate public policy, because such an interpretation would allow unlicensed fishermen to participate in fishing tournaments on state waters. In support of its contention, Century Bass cites *First Texas Sav. Ass'n of Dallas v. Dicker Ctr., Inc.,* 631 S.W.2d 179, 186 (Tex.App.—Tyler 1982, no writ) (a contract to do a thing which cannot be performed without a violation of the law is void). Having found that the rules did not mention licenses and having held that Millender and Holmes should prevail under the contract without any modification, we disagree. Whether a fisherman who participated in Century Bass's tournament was licensed remained a question between the fisherman and the State.[5] Had it desired to insure that all its participants held valid fishing licenses, Century Bass could have specified that each one show a valid license or prove an exemption at the time of registration. It elected not to do so. We find that no public policy

---

5. Again we note that the tournament was held on public waters and a valid fishing license was required by State law, unless the participant was exempt.

was violated when Century Bass elected not to concern itself with the State's licensing requirements. The contract was one that could be performed without a violation of law. *Id.* We overrule point eleven.

## THE JUDGMENT

Point seven contends that the court erred in entering a judgment against Century Bass in the absence of a finding constituting fraud. As noted, the court's charge included a question asking whether the fishermen strictly complied with the tournament rules, and the jury found that they did. This finding alone justifies the award of actual damages because the evidence conclusively shows that they strictly complied with the terms of the contract, which Century Bass breached by not awarding them first prize. They are entitled to recover the damages to compensate them for what they would have received had Century Bass honored its contract. No question has been raised about the propriety of the award of attorney's fees. We overrule point seven.

## EVIDENTIARY RULINGS

■ Century Bass's sixth point complains that the court did not grant its motion to strike Holmes' testimony about a thirty-minute period that Heidemann gave Millender to produce his fishing license, testimony it says was about a "modification" of the rules. The information had not been disclosed during discovery, it asserts, and should not have been admitted as a basis to modify the rules. We have found, however, that the rules did not have to be modified for the fishermen to prevail, as the evidence shows that they complied with the rules as written. Thus, the admission of this testimony, even if error, did not affect Century Bass's substantial rights. TEX.R. CIV. EVID. 103(a). We overrule point six.

The twelfth and final point of error attacks the trial court's decision to permit impeachment of a Century Bass witnesses on a "collateral issue," *i.e.*, whether his residence telephone number was published. Millender and

Holmes respond by saying that Century Bass introduced the issue itself and made no valid objection to their line of questioning.

Century Bass's first witness, Billy Wingo, conducted polygraph examinations for Century Bass after completion of the tournament. The court allowed him to testify as a fact witness after Century Bass assured the court that no opinions would be offered. During the sanctions hearing outside the presence of the jury,[6] Wingo testified that his telephone number was published in Dallas and that he had never had an unpublished number in Dallas.

During direct examination, which covers less than fifteen pages in the statement of facts, the court repeatedly sustained objections that Wingo was being asked to give expert testimony. On cross-examination, the fishermen asked about his telephone number and whether it was unlisted and offered to place a call to the information operator in Dallas to verify that the number was non-published. Over Century Bass's objection, the court allowed them to do so.

■ Assuming without deciding that the impeachment was improper because it involved a collateral matter and considering the nature of Wingo's entire testimony before the jury, we are not of the opinion that the error amounted to such a denial of Century Bass's rights as was reasonably calculated to cause or probably did cause rendition of an improper judgment. TEX.R.APP. P. 81(b)(1). The final point of error is overruled.

Having considered all of Century Bass's points and finding them without merit, we affirm the judgment of the trial court.

---

**6.** The fishermen objected because Century Bass had failed to disclose complete information during discovery.