Opinion filed January 12, 2006












 
 
  
 
 







 
 
  
 
 




Opinion filed January 12, 2006

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                   __________

 

                                                          No. 11-04-00245-CV 

                                                    __________

 

                      CARAUSTAR INDUSTRIES, INC. & McQUEENEY 

                                    GYPSUM
COMPANY, Appellants

 

                                                             V.

 

                                  ELCOR
CORPORATION, Appellee

 



 

                                        On
Appeal from the 142nd District Court

 

                                                        Midland
County, Texas

 

                                                Trial
Court Cause No. CV-42,863

 



 

                                              M
E M O R A N D U M   O P I N I O N

 

Caraustar Industries, Inc. (Caraustar) and its
wholly owned subsidiary, McQueeney Gypsum Company (McQueeney), paid $1.3
million to settle a lawsuit brought against Caraustar by PDS&W for fraud
and conversion of sulphur plant equipment. 
Caraustar and McQueeney then brought this action against Elcor
Corporation (Elcor) for indemnity.  Elcor
had sold the equipment to PDS&W, but the equipment was still on the land
that Elcor subsequently sold to Standard Gypsum Corporation (Standard Gypsum)
in 1986.  Standard Gypsum later merged
into McQueeney.








Caraustar and McQueeney contended that Elcor owed
them indemnity because (1) Elcor had agreed to provide indemnity to Standard
Gypsum in a settlement and indemnity agreement in 1988 and (2) Elcor breached
the warranties in its 1986 general warranty deed to Standard Gypsum that
transferred the equipment as a fixture to Standard Gypsum.  The trial court granted Elcor=s motion for summary judgment holding
that Elcor did not owe indemnity.  We
affirm. 

Background Facts

From 1969 to 1970, Elcor erected and operated a
sulphur extraction plant on a tract of land in Culberson County.  In 1981, Elcor sold the sulphur reactor tower
to PDS&W.  In 1985, Elcor also sold
the remaining equipment as scrap metal to PDS&W for $50,000 under a
contract providing that the equipment would revert to Elcor if not removed from
Elcor=s land
within one year.  More than a year later,
PDS&W had neither paid for the scrap metal nor removed it when Elcor sold
the land to Standard Gypsum (which later merged into McQueeney).

When Elcor sold the land to Standard Gypsum in
1986, Elcor had a suit pending against PDS&W to recover the purchase price
for the sulphur reactor and other equipment which remained  on the land.[1]  Standard Gypsum knew about Elcor=s sale of the sulphur equipment to
PDS&W.  Article XII of the land sale
contract between Elcor and Standard Gypsum (1986 Contract) was titled APersonal Property Reserved@ and dealt in detail with Elcor=s sale of the equipment to PDS&W:

(1)        the 1985 sales contract between Elcor and PDS&W was
attached as an Exhibit;

 

(2)        the lawsuit by Elcor against PDS&W was described;

 

(3)        Standard Gypsum agreed that Elcor could leave the Personal
Property on the land for three years from the date of the closing of the land
sale or sixty days after the termination of the lawsuit between Elcor and
PDS&W, whichever date was later;

 

(4)        the equipment and materials sold to PDS&W were to be
referred to as the

APersonal
Property@;

 

(5)        Elcor indemnified Standard Gypsum against any action or claim
by PDS&W








that might be made against Standard Gypsum Aon account of the ownership of or
payment for the Personal Property.@

 

The deed corresponding to the 1986 Contract
provided that the land conveyance was made ASUBJECT
TO that certain Agreement by and between Grantor and Grantee of even date
herewith,@
referring to an indemnity agreement executed the same day.  The indemnity agreement stated that the land
sold to Standard Gypsum did not include the Personal Property previously sold
by Elcor to PDS&W and that Article XII of the 1986 Contract would govern
the rights and obligations of Elcor and Standard Gypsum concerning the Personal
Property, including the indemnity obligations of Elcor as to the Personal
Property.

In January 1988, after extensive negotiations,
Elcor and Standard Gypsum executed the 1988 Settlement and Indemnity Agreement
(the 1988 Agreement), in which they agreed to share the cost of asbestos
removal and to revoke and replace the provisions in the 1986 Contract
concerning the Personal Property. 
Section I.1 of the 1988 Agreement defined the land sold to Standard
Gypsum in 1986 as the ALand,@ and Section IV.1 defined the sulphur
tower and equipment previously sold to PDS&W as the AReserved
Personal Property.@  The 1988 Agreement provided that the Reserved
Personal Property could remain on the Land until at least October 27, 1989,
after which it would be Adeemed
to have been abandoned by Elcor.@

In April 1998, McQueeney hired Nu-Concepts, LLC to
remove the Reserved Personal Property from the land.  As a result, PDS&W sued Caraustar
(McQueeney=s parent
company) in Culberson County for conversion and fraud.  McQueeney was not sued in that suit.  Caraustar initially joined Elcor as a
third-party defendant seeking contribution or indemnity, but Caraustar later
nonsuited Elcor and refiled its claim for indemnity in Midland County.  Caraustar and McQueeney contended in the
trial court below that Elcor owed them indemnity based on two theories: (1) Elcor
had agreed to an indemnity in the 1988 Agreement that covered the Culberson
County suit and (2) Elcor had breached its warranty against encumbrances in the
1986 general warranty deed because the deed conveyed the sulphur equipment as a
fixture and PDS&W=s
ownership constituted an encumbrance. 
The trial court granted a traditional summary judgment in favor of
Elcor.

 

 








Standing of Caraustar and
McQueeney

In addition to Elcor=s
traditional summary judgment motion, Elcor also moved for a no-evidence summary
judgment asserting that neither party had standing because Caraustar had not
succeeded to any rights of Standard Gypsum and because McQueeney was not a
party to the Culberson County suit brought by PDS&W.  On appeal, Elcor again argues that neither
party had standing to bring an indemnity claim against Elcor.

A plaintiff must have both standing and capacity
to bring a lawsuit.  Austin Nursing
Ctr., Inc. v. Lovato, 171 S.W.3d 845 (Tex. 2005).  As the supreme court in Lovato
explained:

The
issue of standing focuses on whether a party has a sufficient
relationship with the lawsuit so as to have a Ajusticiable
interest@ in its
outcome, whereas the issue of capacity Ais
conceived of as a procedural issue dealing with the personal qualifications of
a party to litigate.@
[6A Charles Alan Wright, Arthur R.
Miller, and Mary Kay Kane, Wright, Miller & Kane, Federal Practice and
Procedure: Civil 2d] ' 1559, at 441 (2d ed.1990).  (Emphasis added)

 

Lovato, 171 S.W.3d at 848. 
A plaintiff has standing to sue when he or she is personally aggrieved
by the alleged wrong, regardless of whether the plaintiff is acting with legal
authority.  Nootsie, Ltd. v.
Williamson County Appraisal Dist., 925 S.W.2d 659, 661 (Tex. 1996).  A party has capacity when that party has the
legal authority to act, regardless of whether the party has a justiciable
interest in the controversy.  Id.

Caraustar and McQueeney were aggrieved by having
paid the Culberson County suit settlement, and they did file documents showing capacity
in their response to Elcor=s
motion for a no-evidence summary judgment. 
That Caraustar was not entitled to any benefit under the 1986 Contract
or the 1988 Agreement because it was not a party to those agreements was an
additional defense available to Elcor which we need not address.  Elcor=s
indemnity agreement in the 1988 Agreement did not cover the matters involved in
the Culberson County suit, and there was no breach of warranty in the 1986 deed
because the sulpher plant equipment was classified as personal property and was
conveyed to PDS&W prior to the deed. 
Elcor and Standard Gypsum could not have made it more evident that the
sulphur plant equipment was not part of the land conveyed to Standard Gypsum.

 








The Issues

Caraustar and McQueeney first assert that the
trial court erred in granting Elcor=s
motion for summary judgment and in denying Caraustar and McQueeney=s cross-motion for partial summary
judgment because the money Caraustar and McQueeney paid to settle the Culberson
County suit falls within the scope of Elcor=s
indemnity obligations in the 1988 Agreement. 
Second, they assert that the trial court erred by granting Elcor=s motion for summary judgment and in
denying Caraustar and McQueeney=s
cross-motion for partial summary judgment because Elcor breached the warranties
it gave to McQueeney (successor to Standard Gypsum) in the 1986 general
warranty deed.[2]

Standard of Review 

To determine if the trial court erred in granting
Elcor=s motion
for a traditional summary judgment, we must consider the summary judgment
evidence in the light most favorable to the nonmovant, indulging all reasonable
inferences in favor of the nonmovant, and determine whether the movant proved
that there was no genuine issue of material fact and that it was entitled to
judgment as a matter of law.  Nixon v.
Mr. Prop. Mgmt. Co., 690 S.W.2d 546 (Tex. 1985); City of Houston v.
Clear Creek Basin Auth., 589 S.W.2d 671 (Tex. 1979). 

This appeal involves the construction of two
documents:  the 1988 Agreement and the
1986 deed.  Because the construction of a
document is a matter of law, we review the matter on a de novo basis.  JVA Operating Co. v. Kaiser-Francis Oil
Co., 11 S.W.3d 504 (Tex. App.CEastland
2000, pet. denied).

1988 Settlement and Indemnity Agreement








Caraustar and McQueeney argue that the $1.3
million they paid in settlement of a lawsuit in Culberson County triggered an
indemnity obligation owed by Elcor pursuant to the 1988 Agreement signed by
Elcor and Standard Gypsum, McQueeney=s
predecessor.  Indemnity agreements are
construed under normal rules of contract construction.  Gulf Ins. Co. v. Burns Motors, Inc.,
22 S.W.3d 417, 423 (Tex. 2000).  The
primary goal is to ascertain, and give effect to, the parties= intent as expressed in the
instrument.  Ideal Lease Serv., Inc.
v. Amoco Prod. Co., 662 S.W.2d 951, 953 (Tex. 1983); Coker v. Coker,
650 S.W.2d 391, 393 (Tex. 1983).  If the
written instrument is so worded that it can be given certain or definite legal
meaning or interpretation, then it is not ambiguous and the court will construe
the contract as a matter of law. Coker, 650 S.W.2d at 393; Century
Bass Club v. Millender, 949 S.W.2d 841, 844-45 (Tex. App.CWaco 1997, writ denied).  The 1988 Agreement is not ambiguous.

We consider the entire 1988 Agreement in an effort
to harmonize and give effect to all the provisions of the contract so that none
will be rendered meaningless.  Universal C. I. T. Credit Corp. v. Daniel,
243 S.W.2d 154, 158 (Tex. 1951).  No
single provision taken alone will be given controlling effect; rather, all the
provisions must be considered with reference to the whole instrument.  Myers v. Gulf Coast Minerals Mgmt. Corp.,
361 S.W.2d 193, 196 (Tex. 1962). Language should be given its plain grammatical
meaning unless it definitely appears that the intention of the parties would be
thereby defeated.  Century Bass Club,
949 S.W.2d at 844‑45.

Significant in the 1988 Agreement was Section
VI.4, entitled AEntire
Agreement; Modifications,@
which expressed Elcor=s
and Standard Gypsum=s
agreement that the 1988 Agreement would control their rights concerning the
sulphur equipment (the Reserved Personal Property):

VI.4
Entire Agreement; Modifications. 
Upon execution of this Agreement, the Prior Indemnity Agreement and
provisions contained in Articles XI and XII of the [1986] Purchase Contract
shall be of no further force or effect and the provisions of this
Agreement shall be and contain the entire agreement between the parties hereto
with respect to the matters covered hereby and shall govern the rights and
obligations of the parties with respect to liability arising from or relating
to the Reserved Personal Property or the ownership of, or operations on, the
Land, including, but not limited to, the surface condition of the Land.  (Emphasis added)

 

In Section V.5 of the 1988 Agreement, Elcor
limited its indemnification of Standard Gypsum to claims arising out of Elcor=s ownership of the Land and Elcor=s conduct in connection with the
Reserved Personal Property:

A.        Elcor=s
ownership of the Land (including all claims made by any taxing authority
pursuant to Article VIII, '
1-d of the Texas Constitution or '
23.55 of the Texas Tax Code); and

 








B.         The conduct of either Elcor or its agents . . . in
connection with the Reserved Personal Property, including, but not limited to,
the showing or exhibition of the Reserved Personal Property or the removal,
dismantling or alteration of the Reserved Personal Property.

 

PDS&W=s
Culberson County suit against Caraustar alleged two intentional torts: fraud
and conversion.  Thus, the legal basis
for the suit was PDS&W=s
alleged ownership of the Personal Property and McQueeney=s
intentional conduct in removing and selling the Personal Property through
Nu-Concepts.  Neither Elcor=s ownership of the Land nor Elcor=s conduct gave rise to PDS&W=s Culberson County lawsuit.  The Culberson County lawsuit by PDS&W
against Caraustar did not fall within A or B in Section V.5 of the 1988
Agreement.

Even though we hold that the Culberson County
lawsuit did not come within the plain meaning of the indemnification provision
in Section V.5, the context of the agreements between Elcor and Standard Gypsum
provide additional reasons for our conclusion that Elcor owed no indemnity
under the 1988 Agreement.  Elcor=s agreement to indemnify Standard
Gypsum was significantly broader in Article XII of the 1986 Contract[3]
than it was in Section V.5 of the 1988 Agreement.  The replaced Article XII of the 1986
Contract, entitled APersonal
Property Reserved,@ provided
that Elcor agreed to indemnify Standard Gypsum as to:

A.        Any
action . . . of PDS & W, its successors or assigns which may be made
against [Standard Gypsum] on account of the ownership of or payment for the
Personal Property. 

 

Indemnification by Elcor for any action against Standard Gypsum
by PDS&W on account of its ownership or payment for the Personal Property
was expressly voided by Section VI.4 of the 1988 Agreement.

Comparing Article XI in the 1986 Contract with
Section V.2 of the 1988 Agreement is also instructive as to the meaning of AElcor=s
ownership of the Land@
in Section V.2.  In Article XI of the
1986 Contract, Elcor indemnified Standard Gypsum for a broad array of claims:

[W]hich
[Standard Gypsum] may incur or become subject to as a result or arising out of
Elcor=s
ownership of the Subject Property (including all claims made by any taxing
authority pursuant to Article VIII, '
1-d of the Texas Constitution or '
23.55 of the Texas Tax Code); provided, however, that the obligations of Elcor
with respect to the Personal Property shall be governed by the provisions of
Article XII.








 

Article XII (b) and (c) provided that Elcor indemnified Standard
Gypsum for Elcor=s conduct
in removing, dismantling, or altering the Personal Property.  Elcor and Standard Gypsum dealt with the
ownership of the Land and the Personal Property as separate subjects in both
the 1986 Contract and in the 1988 Agreement. 
It was PDS&W=s
ownership of the Reserved Personal Property, not Elcor=s
ownership of the Land, that led to the Culberson County lawsuit.  It was McQueeney=s
conduct, not Elcor=s
conduct, that also led to the Culberson County lawsuit.

The trial court correctly ruled that neither Elcor=s ownership of the Land nor Elcor=s conduct was involved in the Culberson
County lawsuit.  

The 1986 General Warranty Deed

Caraustar and McQueeney argue that the sulphur
reactor tower and plant equipment were fixtures that were conveyed with the
land to Standard Gypsum.  Based on their
assumption that the sulphur reactor tower and plant equipment were fixtures,
they contend that PDS&W=s
ownership of those fixtures constituted an encumbrance in violation of Elcor=s warranty of title to the real
estate.  We disagree with both their
assumption and their conclusion.

Absent a specific reservation in a deed, buildings
and other improvements used in connection with realty in such a way as to
constitute appurtenances or fixtures pass as a matter of course by the
conveyance.  N.P., Inc. v. Turboff,
111 S.W.3d 40, 44 (Tex. 2003).  Elcor
sold the tower and equipment before selling the land to Standard Gypsum, and
the parties contractually agreed in the 1986 Contract that the tower and
equipment were personal property at the time of the 1986 land sale. Article XII
of the 1986 Contract specifically reserved the tower and equipment from the
land sale and referred to them as APersonal
Property.@

The 1986 deed was Asubject
to@ an indemnity agreement executed the
same day.  That indemnity agreement again
made it clear that the land conveyed did not include the Personal Property:








As used herein, the term Acondition
of the surface of the Subject Property@
shall not include any materials or equipment described in the Purchase and Sale
Agreement dated April 30, 1985, by and between Elcor Corporation and PDS &
W, or the reactor tower sold to PDS & W by Elcor through auction in
September, 1981 (all of which materials and equipment and the reactor tower are
hereinafter referred to in the aggregate as the APersonal
Property@).  The rights and obligations between Elcor and
[Standard Gypsum] relating to the Personal Property shall be governed by the
provisions of the Contract of Sale and Purchase (the AContract
of Sale and Purchase@)
between such parties dated August 29, 1986.

 

Although improvements usually become part of the
land, parties may agree that those improvements are personalty.  Travis Cent. Appraisal Dist. v. Signature
Flight Support Corp., 140 S.W.3d 833, 837-38 (Tex. App.CAustin 2004, no pet.).  Standard Gypsum agreed that the Personal
Property was not included in the sale of the land. 

In the 1986 Contract, in the 1986 deed itself, and
in the 1988 Agreement, Elcor and Standard Gypsum agreed that the Personal
Property did not pass under the 1986 deed. 
Section IV of the 1988 Agreement defined the sulphur reactor tower and
plant equipment as AReserved
Personal Property,@ just as
Article XII of the 1986 Contract had referred to them as APersonal Property.@ 
Had the 1986 deed purported to pass the Personal Property as a fixture,
there would have been no reason for Section IV in the 1988 Agreement.  Elcor did not breach its 1986 deed to
Standard Gypsum.  Both issues on appeal
are overruled.

The trial court below did not err in granting
summary judgment to Elcor.

This Court=s
Ruling

The judgment of the trial court is affirmed.

 

TERRY McCALL

JUSTICE

 

January 12, 2006

Not designated for publication. 
See Tex. R. App. P.
47.2(a).

Panel
consists of:  Wright, C.J., and

McCall,
J., and McCloud, S.J.[4]











[1]That suit ultimately resulted in a final judgment for
Elcor in 1987.





[2]Normally, the denial of a summary judgment is not
reviewable on appeal because it is not a final judgment.  Cincinnati Life Ins. Co. v. Cates, 927
S.W.2d 623, 625 (Tex. 1996).  In this
case, however, both the motion for summary judgment and the cross-motion for
partial summary judgment involve the interpretation of the same contractual
provisions in the 1988 Agreement and the 1986 deed.





[3]The deed was Asubject
to@ the indemnity agreement executed on the same
date.  That indemnity agreement dictated
that Elcor=s indemnity obligation relating to the Personal
Property would be governed by Article XII of the 1986 Contract.





[4]Austin McCloud, Retired Chief Justice, Court of
Appeals, 11th District of Texas at Eastland sitting by assignment.